GERALD MAGNUSON, Plaintiff-Appellee, v. ALAN P. SCHAIDER, Defendant-Appellant (Alan P. Schaider, Plaintiff-Appellant; Magnuson Industries, Inc., Defendant-Appellee and Plaintiff-Appellee; Gerald Magnuson *et al.*, Defendants-Appellees).

Second District Nos. 2—88—0682 through 2—88—0684 cons.

Opinion filed May 12, 1989.

348

Liebovich & Weber, P.C., of Rockford (Theodore Liebovich, of counsel), for appellant.

Martenson & Associates, of Rockford (David L. Martenson, of counsel), for appellee.

JUSTICE DUNN delivered the opinion of the court:

This is a consolidated appeal from orders of summary judgment entered in three cases. The three cases involve disputes arising from an agreement in which Alan Schaider purchased a tavern from Gerald Magnuson and Magnuson Industries, Inc. (Industries). Schaider appeals from judgments against him in all three cases. In No. 87—L—210, the court granted summary judgment to defendants Gerald Magnuson, Stewart Magnuson, and Industries, in Schaider's suit for breach of contract. In No. 87—L—225, summary judgment was entered in favor of Industries in its suit against Schaider for $9,200 for four months' rent and $10,924 for fraudulent misrepresentation. In No. 87—L—192, summary judgment was entered for Magnuson on a confession of an installment judgment note against Schaider for $164,171.67. Schaider raises six issues on appeal. Schaider's essential contentions on appeal are that the court erred in dismissing all but one count of his complaint and that summary judgment should not have been granted in any of these cases because there remains material disputed questions of fact. We affirm in part and reverse in part.

Schaider purchased from Gerald Magnuson and Industries a bar called the Mating Place. The agreement was comprised of four documents: a stock purchase agreement, a purchase and sale agreement, an installment judgment note for $100,000, and a lease. Under the stock purchase agreement, Schaider purchased from Gerald Magnuson all the stock of the Mating Place, Inc., for $170,000, $100,000 to be paid by a promissory note. Also, in consideration for the $170,000, under the purchase and sale agreement, Schaider received all of the assets and fixtures of the bar from Magnuson and Industries. The promissory note was an installment judgment note for $100,000 which provided that Schaider would make monthly payments of $1,266.76 to Gerald Magnuson for 10 years. Under the lease Schaider rented the bar premises from Industries for 36 months for $2,300 a month. Also under the lease, Schaider was required to maintain dramshop insurance for himself and the landlord, Industries.

The contracts provided for remedies upon default. The lease provided Schaider with a right to notice and 10 days to cure a rental default and 20 days to cure any other defaults. The stock purchase agreement provided Schaider 15 days to cure a default, but also contained a provision which allowed Gerald Magnuson to take immediate possession upon default. The stock purchase agreement also provided

that Schaider's promissory note would be secured by a purchase money security interest covering all assets of the bar. The installment judgment note provided that upon default the holder could declare the entire balance due without notice.

On June 6, 1986, Gerald Magnuson and Industries sent notice to Schaider that he was in default on the installment note, the lease, and the stock purchase agreement. The notice did not specify how and when Schaider defaulted. The notice demanded full payment on the note, payment of all amounts due under the lease, payments due under the stock purchase agreement, and stated an intent to terminate the lease and exercise all rights under the lease unless the default was corrected within the time allowed under the lease.

The evidence is undisputed that when notice of default was sent, Schaider owed two months' rent, two months' on the note, and did not have dramshop insurance as required under the lease. In his deposition, Schaider stated that sometime in May 1986 he told Gerald Magnuson, president of Industries, that he had a cash-flow problem, and Magnuson told him he could delay his payments until the first of June. When that time arrived, Schaider was told by Stuart Magnuson, Gerald's son and an agent of Industries, that Gerald was out of town and Schaider could make his payments after he returned from his trip to Hawaii, for which he was leaving June 6, 1986. Schaider also stated he told Stuart he was having trouble with his dramshop insurance premium, and Stuart told him he knew of another company that he could arrange to provide him with insurance. Stuart told him he would take care of it. Schaider told Stuart to seek payment for the insurance from his manager Curt Cleaveland.

Stuart Magnuson, in an affidavit, denied telling Schaider that he could defer his payments until his return from Hawaii.

On the night before the notice of default was sent, June 5, 1986, Gerald Magnuson visited the tavern and talked with Curt Cleaveland, who managed the bar for Schaider. According to Cleaveland's deposition, Magnuson told him that the dramshop insurance on the bar had been canceled and that Cleaveland should close the bar. At the end of the night, Cleaveland told the employees that the bar would be closed until Schaider returned from Hawaii. Cleaveland stated that it was his decision to close the bar. He did not contact Schaider before he made this decision. Cleaveland also stated that Magnuson told him that night that he would pay him $6,000, the amount Schaider owed him for loans he made to Schaider. Magnuson also told Cleaveland he would pay him $400 a week, $100 more than Schaider paid him, to keep an eye on the bar while it was closed.

Warren Johnson testified in a deposition that he used to be part owner of the tavern with Schaider prior to June 1986. He received a phone call from an employee of the tavern on June 6 who told him that the bar had been closed after Gerald Magnuson spoke to Cleaveland. Johnson phoned Schaider, who was at the airport waiting for a flight to Hawaii. When Johnson told him what happened, Schaider asked him to do what he could to keep the bar open. Johnson stated that he had many conversations with Schaider on this morning.

Johnson also talked to Cleaveland, who told him the bar was closed because the dramshop insurance expired. Johnson told Cleaveland that Schaider requested that Cleaveland use the money Schaider left him to pay for the insurance. Schaider stated in his deposition that he left Cleaveland $3,000. Kathy Culich, Schaider's insurance agent, stated in a deposition that she needed $1,260 to renew the insurance. Johnson told Cleaveland that he would help pay for the insurance if Cleaveland did not have enough money. Johnson also called Kathy Culich to let her know that Cleaveland would be contacting her about renewing the insurance. Later that day, Cleaveland told Johnson that he had contacted Culich to discuss the insurance, but he also stated to Johnson that more was involved than dramshop insurance; Schaider owed Magnuson money. Johnson contacted Stuart Magnuson and offered to pay him the funds to keep the tavern open. Magnuson told him not to get involved because there was more going on than he knew about. Johnson talked to Culich again. She stated Cleaveland indicated that he would deliver the money for the insurance but never did so. Johnson himself did not offer to pay Culich. Johnson talked with Schaider later in the day, and Schaider told him to "let it go." Schaider had spoken with his attorney, who told him the situation was more involved than it appeared.

Kathy Culich stated in her deposition that Schaider called her on June 6, 1986, and she told him that his insurance had been canceled. Schaider told her to call Cleaveland immediately because he had money to pay for reinstating the insurance. Culich said that on June 6, 1986, Cleaveland told her he would bring the money, but he did not do so. Culich went to the bar to find Cleaveland but could not locate him. On June 9, 1986, Culich received a call from Schaider, who told her not to renew the insurance because he had learned that there was more involved than reinstating his insurance.

Tim Gill stated in a deposition that he was Schaider's attorney in June 1986. After Schaider returned from Hawaii, he met with Schaider and Cleaveland. Cleaveland told them that he was paid by Magnuson to close the tavern but that he would never testify to that

in court because he was now working for Magnuson.

Schaider stated in his deposition that while in Hawaii he tried to contact Cleaveland by phone but was unable to reach him. When he returned from Hawaii on June 15, 1986, he went to the bar and found that all cash on hand was missing, as well as promotional items such as shirts, and all his books and records. He did not know who took these items. Schaider stated that he removed some inventory and sold it at this time. He did not attempt to reopen the bar when he returned.

CASE NO. 87—L—210 — SCHAIDER V. MAGNUSON *ET AL.*

In No. 87—L—210, Schaider sued Gerald Magnuson, Stewart Magnuson, and Magnuson Industries, Inc. (Industries), for breach of contract, alleging five counts: breach of the lease, breach of covenant of quiet enjoyment, breach of the purchase and sale agreement, wrongful replevin, and breach of the stock purchase agreement. Defendants moved to dismiss under section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—619). The trial court granted the motion on all counts except count III, which alleged breach of the purchase and sale agreement; however, the trial court dismissed the request for punitive damages on this count. Schaider filed an amended complaint which was also dismissed except for count III. The court then granted summary judgment for defendants on count III.

Schaider first contends the trial court erred in granting defendant's motion to dismiss all but one count of his amended complaint under section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—619) because defendant's motion failed to set forth proper grounds for dismissal under section 2—619.

Under section 2—619 a defendant may seek dismissal of a complaint where it is barred by affirmative matter which defeats the claim. (Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a)(9).) If the grounds for dismissal do not appear on the face of the pleading, the motion shall be supported by affidavit. (Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a).) A motion under this section admits all well-pleaded facts, but not conclusions unsupported by allegations of specific fact upon which such conclusions rest. (*Davis v. Weiskopf* (1982), 108 Ill. App. 3d 505, 509.) An affirmative matter asserted to defeat the claim must be something more than evidence offered to refute a well-pleaded fact. *Russo v. Boland* (1982), 103 Ill. App. 3d 905, 908; *Smith v. St. Therese Hospital* (1980), 87 Ill. App. 3d 782, 785.

In count I of his amended complaint, Schaider alleged defend-

ant breached the lease agreement by failing to provide adequate notice of default and a right to cure as provided in the lease agreement. Schaider specifically alleged that Magnuson sent notice to plaintiff on June 6, 1986, when defendant knew plaintiff was out of town, and thereafter Magnuson took possession and control of the leased premises, confiscating all of plaintiff's personal property, cash on hand, business records, fixtures and inventory. Schaider also alleged that defendant closed plaintiff's business without his knowledge or consent while he remained out of State. Schaider did not state when defendant took possession and control in this count, but an affidavit filed by Schaider in response to the motion to dismiss states that defendant did so on June 6, 1986.

As an affirmative defense, Magnuson alleged that Schaider failed to make rent payments and Schaider consented to the entry of the premises on July 1, 1986, voluntarily removing himself. An attached copy of the consent agreement states that plaintiff consented to Stewart Magnuson entering the building to clean the premises and have the locks changed. Defendant also alleged plaintiff disposed of his inventory and removed his possessions prior to defendant's entry on July 1, 1986.

Magnuson's assertions do not affirmatively defeat plaintiff's claim. These assertions do not defeat the essential issue raised by Schaider's claim that defendant failed to provide proper notice or a right to cure as provided in the contract. The lease agreement provides for written notice of default by certified mail. The contract gives Schaider 10 days from the mailing of notice to cure a rent payment default and 20 days from the mailing of notice to cure any other defaults in the lease. Schaider contends that Magnuson repossessed the leased premises and the personal property on the premises on June 6, 1986, the same day notice was sent. Magnuson does not address this contention in his motion to dismiss.

Magnuson also contends that the consent agreement signed by Schaider on July 1, 1986, affirmatively defeats plaintiff's claim. We disagree. The consent form does not affirmatively establish defendant's right to do anything but change the locks and clean the premises. Furthermore, no matter what it authorized, it gave Magnuson no authority to repossess the premises or personal property on June 6, 1986.

In count II, Schaider alleged defendant breached the covenant of quiet enjoyment, alleging essentially the same reasons as count I. Magnuson alleged the same affirmative defense. Again, Magnuson's assertions fail to affirmatively defeat Schaider's claim that he was not

given proper notice and a time to cure default.

■ In count III, Schaider alleged Magnuson breached a purchase and sale agreement for the assets and fixtures at the leased premises, alleging the same facts as count I and II. The trial court did not dismiss this count, but dismissed plaintiff's claim for punitive damages of $250,000 under this count. On appeal, Schaider contends that the allegations of Magnuson's wrongful foreclosure and seizure of the premises support a claim for punitive damages. Plaintiff has not cited any authority for this argument; thus, we find it waived. (See *In re Marriage of Anderson* (1985), 130 Ill. App. 3d 684, 688-89 (failure to cite authority in support of an argument violates Supreme Court Rule 341(e)(7) (87 Ill. 2d R. 341(e)(7)) and waives that point on appeal).) Furthermore, we point out that, generally, punitive damages are not recoverable in actions for breach of contract. (*St. Ann's Home for the Aged v. Daniels* (1981), 95 Ill. App. 3d 576, 580; *Sabath v. Mansfield* (1978), 60 Ill. App. 3d 1008, 1015.) We do not find that Schaider has properly alleged malice, wantonness, or oppression to come within the exception to this rule. *St. Ann's Home for the Aged*, 95 Ill. App. 3d at 580; *Wallace v. Prudential Insurance Co. of America* (1973), 12 Ill. App. 3d 623, 629.

■ Count IV of Schaider's complaint asserted a claim for wrongful replevin. Schaider has mischaracterized his action in this count since there is no evidence that his property was seized through a replevin action. An action in wrongful replevin is an action that claims that property was wrongfully seized through a replevin action. (See Ill. Rev. Stat. 1987, ch. 110, par. 19—101 *et seq.*) Schaider asserted Magnuson wrongfully took physical possession and control of the leased premises and all of his property contained on the premises, but he did not assert that this was done through a replevin action by Magnuson. Rather than a cause of action for wrongful replevin, this count alleges a cause of action for conversion. The essence of an action in conversion is the wrongful deprivation of property from one who has a right to its immediate possession. *Yardley v. Yardley* (1985), 137 Ill. App. 3d 747, 757; *Bender v. Consolidated Mink Ranch, Inc.* (1982), 110 Ill. App. 3d 207, 213.

■ ■ Defendant's motion to dismiss this count realleged the same affirmative defense, but also asserted that the count was inadequate at law. As already discussed, defendant's affirmative defense assertions fail to defeat Schaider's claim that his property was repossessed on June 6, 1986. Defendant's other contention, that the count is inadequate at law, is not a proper section 2—619 assertion. This allegation should have been brought under section 2—615, which allows

dismissal of a complaint for failure to state a cause of action. (Ill. Rev. Stat. 1987, ch.110, par. 2—615.) A motion to dismiss a pleading should clearly delineate under which section of the Civil Practice Act it has been brought and may not properly be combined for a joint analysis and determination. (*Davis v. Weiskopf*, 108 Ill. App. 3d at 508; *Galayda v. Penman* (1980), 80 Ill. App. 3d 423, 424-25.) Defendant should have first challenged the legal sufficiency of the complaint, and then, only when a legally sufficient cause of action had been stated, should the defendant have challenged the complaint with an affirmative defense. (See *Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 406.) Nonetheless, in the interests of judicial expedience, courts have reviewed section 2—615 motions improperly joined with other motions to dismiss. *Janes*, 57 Ill. 2d at 407; *Herman v. Hamblet* (1980), 81 Ill. App. 3d 1050, 1055.

 █ A motion to dismiss based on plaintiff's failure to state a cause of action must specifically point out where the pleading is insufficient at law and why it is insufficient so that the opposing party may be allowed to cure the objection by amendment. (*Uptown Federal Savings & Loan Association v. Kotsiopoulos* (1982), 105 Ill. App. 3d 444, 449; *Danville Producers Dairy v. Preferred Risk Mutual Insurance Co.* (1962), 33 Ill. App. 2d 359, 362.) Magnuson's motion alleged Schaider failed to state what fixtures or inventory had been wrongfully possessed. In his amended complaint Schaider attached a list of inventory of the items he alleged were wrongfully possessed by defendant. Defendant did not address this amendment. Thus, defendant's basis for dismissal no longer existed. Therefore, the dismissal of this count was error since the affirmative defenses did not defeat the claim, and defendant failed in response to the amended complaint to allege a basis to show the complaint was inadequate at law.

In count V plaintiff alleged defendant breached the stock purchase agreement, alleging essentially the same reasons covered in the other counts. In his motion to dismiss, defendant contended plaintiff was sent proper notice by registered mail. Defendant also contended that after notice was sent, plaintiff removed all inventory from the premises, failed to obtain dramshop insurance, defaulted under the City of Rockford liquor laws, and closed the premises prior to July 1, 1986. Defendant's assertions fail to affirmatively defeat plaintiff's essential contention that defendant wrongfully took possession of the leased premises and the personal property on the premises on June 6, 1986, thus violating the stock purchase agreement, which provided for notice and 15 days to cure default. Defendant's contention that notice was properly sent on June 6, 1986, does not defeat this claim since

Schaider claims that he was not afforded a right to cure after notice was sent. Nor does the fact that Schaider failed to maintain dramshop insurance or that he removed inventory defeat his claim that he was not afforded 15 days to cure defaults under the agreement.

We conclude that the trial court erred in dismissing counts I, II, IV, and V in Schaider's complaint because defendant's motion to dismiss failed to affirmatively defeat those counts for the reasons stated above.

■■ Schaider next argues the trial court erred when it granted summary judgment in favor of Magnuson on count III of the complaint. In *Wysocki v. Bedrosian* (1984), 124 Ill. App. 3d 158, 164, this court reviewed the nature of summary judgment:

"A motion for summary judgment is proper where the pleadings, depositions and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1981, ch. 110, par. 2—1005(c).) The extreme nature of the summary judgment remedy requires that the trial court exercise extraordinary diligence in its review of the record so as not to preempt the right to a trial by jury or the right to fully present the factual basis for a claim. (*Estate of Kern v. Handelsman* (1983), 115 Ill. App. 3d 789, 793.) The trial court must construe the pleadings, depositions and affidavits most strictly against the moving party and most liberally in favor of the opponent. Summary judgment should be granted only when the party's right to it is clear and free from doubt. (*Estate of Kern v. Handelsman* (1983), 115 Ill. App. 3d 789, 793; *Gagliardo v. Vodica* (1978), 58 Ill. App. 3d 1053, 1055.) Inferences may only be drawn from undisputed facts, and, if fair-minded persons may draw differring inferences from these undisputed facts, this presents a material issue to be tried. (*Gagliardo v. Vodica* (1978), 58 Ill. App. 3d 1053, 1055.) On appeal, the court will reverse an order granting summary judgment if it determines that a material issue of fact exists and that the moving party is not entitled to judgment as a matter of law. *Estate of Kern v. Handelsman* (1983), 115 Ill. App. 3d 789, 793."

In count III of his complaint, Schaider realleged count I and count II, which alleged defendant repossessed the tavern premises on June 6, 1986, and alleged defendant breached the purchase and sale agreement by barring plaintiff from the leased premises and taking control and possession of the assets and inventory and failing to comply with

the duties and obligations incumbent upon defendant under the lease agreement. We find no evidence that Schaider was barred from the leased premises; however, there appears to be a question as to whether defendant breached the purchase and sale agreement by taking possession and control of the assets and inventory on June 6, 1986, and in failing to comply with the lease agreement.

 █ Before we address the facts regarding June 6, 1986, we must first determine the rights of the parties under the purchase and sale agreement. Neither party on appeal has briefed issues concerning the construction of the purchase and sale agreement or the other contracts made a part of the agreement. Where the question involves one of contract construction, a court of review may ascertain the meaning of contract provisions from the instrument itself as a matter of law, absent an ambiguity in the contract. (*Tate v. Wabash Datatech, Inc.* (1986), 147 Ill. App. 3d 230, 236.) In this case the four contracts that make up the purchase of the tavern must be read together as essentially one contract. "The general rule is that 'in the absence of evidence of a contrary intention, where two or more instruments are executed by the same contracting parties in the course of the same transaction, the instruments will be considered together and construed with reference to one another because they are, in the eyes of the law, one contract.' " *Peters & Fulk Realtors, Inc. v. Shah* (1986), 140 Ill. App. 3d 301, 305, quoting *Tepfer v. Deerfield Savings & Loan Association* (1983), 118 Ill. App. 3d 77, 80.

 █ With the above in mind, we consider the contracts. The contract allegedly breached in count III, the purchase and sale agreement, unlike the lease and the stock purchase agreement, does not provide for the parties' rights and obligations upon default, but it appears that the remedies of the stock purchase agreement should apply to this contract. The assets purchased under the purchase and sale agreement are listed under the stock purchase agreement as collateral for the installment judgment note. Furthermore, a provision in the stock purchase agreement refers to these assets in describing the seller's right to repossession upon default. It is clear that the assets included in the purchase and sale agreement have been made a part of the stock purchase agreement. Thus, we find that the remedies provided by the stock purchase agreement are applicable to the purchase and sale agreement. Next, we must construe the default remedy provisions provided under the stock purchase agreement. It appears the contract contains conflicting default provisions. One paragraph entitles the seller to immediate possession upon default; however, another paragraph appears to provide the buyer with 15

days to cure defaults. Paragraph 16 of the stock purchase agreement states:

> "In the event of failure of the Buyers to make any payments as required under this Agreement, or to pay taxes or all insurance payments, or assessments when due, or the loss of the food and liquor licenses, or upon bankruptcy or an assignment for the benefit of creditors, or in the event of the Buyers' failure to perform any other covenant under this Agreement, the Seller may declare this Agreement and Contract for Sale terminated and shall thereupon be entitled to immediate possession of said premises, fixtures and equipment and, in such event, the payments made by the Buyers may be retained by the Seller as liquidated damages."

Paragraph 13 provides:

> "In the event of default of any provision of this Agreement by Buyers, Seller shall give notice to Buyers of such default within fifteen (15) days to correct such said default."

While at first glance paragraph 13 may seem to state that seller has 15 days to provide notice of default, but the buyer has no time to correct the default, such a construction would render the provision meaningless. It appears from the language used—"to correct such said default"—that the parties intended to provide the buyer with 15 days from receipt of notice to cure defaults. Since it is presumed that all provisions are inserted for a purpose (*Bruno Benedetti & Sons, Inc. v. O'Malley* (1984), 124 Ill. App. 3d 500, 506), we construe this paragraph to entitle buyer to 15 days after receipt of notice to cure a default. Thus, we find the stock purchase agreement contains conflicting provisions for remedies upon default.

In construing a contract with conflicting provisions, it is presumed that all provisions were inserted for a purpose, and conflicting provisions will be reconciled if possible so as to give effect to all of the contract's provisions. (*Bruno Benedetti & Sons, Inc. v. O'Malley* (1984), 124 Ill. App. 3d 500, 506.) Here, in order to give effect to both provisions, the contract must be construed to provide a right to notice and 15 days to cure defaults coming under the stock purchase agreement and the purchase and sale agreement, and then only if the buyer fails to cure a default within the allotted time after notice was properly given, the seller may terminate the contract and take immediate possession. To read the contract otherwise, giving defendant the right to terminate and take immediate possession without providing notice and a right to cure, would render paragraph 13 superfluous. In further support of this construction we point to the lease, which pro-

vides the lessee with 10 days to cure rent defaults and 20 days to cure other defaults in the lease. The lease was also made a part of the stock purchase agreement. The stock purchase agreement provides:

"As additional collateral security, the Buyers will reassign and deliver to the Seller the Lease referred to in Paragraph 18 on condition that the Buyers may remain in possession of the Leased Premises so long as:

a. They fully comply with all of the terms and conditions of such Lease, including the prompt payment of rent.

b. They are not in default in the payment of the Promissory Note referred to in Paragraph 3.

c. They comply with the terms and conditions of the Purchase Money Security Agreement referred to in this paragraph. Upon the payment in full of the Promissory Note referred to in Paragraph 3, the Seller shall execute and deliver to the Buyers, a release of collateral and termination statement in the form required by the Secretary of State of the State of Illinois, and a reassignment of the Lease."

If we were to construe the stock purchase agreement so that the seller was entitled to immediate possession upon default, then the cure provisions specifically provided in the lease would also be rendered superfluous. We do not believe that the parties intended to provide the seller the right to immediate possession upon default where the parties specifically provided for a right to cure in two of the contracts.

We find that before Magnuson could take any action against the assets purchased under the purchase and sale agreement, Magnuson had to allow Schaider time to cure as stated in the stock purchase agreement, that is 15 days from the receipt of notice to cure any defaults. Next, we turn to the facts alleged involving June 6, 1986, the day Magnuson sent notice of default to Schaider. Schaider contends that Magnuson closed his bar on June 6, 1986, by paying Schaider's manager $5,000 to close it down and keep it closed, thus breaching the contract by taking control of the assets of the bar without providing time to cure the defaults. Magnuson contends that the evidence does not support Schaider's theory that he closed the bar on June 6, 1986. It appears, however, that there is sufficient evidence to raise a question of fact on this issue.

The evidence, which consisted of affidavits and excerpts of depositions, showed the following. On June 5, 1986, Gerald Magnuson visited the bar and talked with Curt Cleaveland, who was managing the bar for plaintiff. That night, Cleaveland closed the bar, telling employ-

ees it would remain closed until plaintiff returned from Hawaii. Plaintiff contends that Magnuson persuaded Cleaveland to close the bar by offering him more money—$400 a week instead of $300, along with a lump sum payment of $5,000. In his deposition, Stuart Magnuson, admitted that defendant paid Cleaveland $5,000 and $400 for one week. Magnuson denied, however, that Cleaveland was paid to close the bar. He said it was his father's idea to pay Cleaveland $5,000, but he understood that it was to help out Cleaveland, who had loaned plaintiff approximately $6,000 and stood to lose this money. Magnuson said Cleaveland was paid $400 for one week to keep an eye on the bar after it was closed.

Cleaveland, in his deposition, denied that he closed the bar in return for money from Magnuson. He stated that he made the decision to close the bar when he learned from Magnuson that the dramshop insurance had expired. Tim Gill, plaintiff's former attorney, however, testified in his deposition that Cleaveland told him he shut the bar down in exchange for the payment from defendant, but he would never testify to that in court.

■■■ We find the facts alleged raise a material question of fact as to whether defendant breached the contract by closing Schaider's bar by hiring away Schaider's manager, Cleaveland, on June 5, 1986. If, but for Magnuson's payment to Cleaveland, the bar would have remained open, then Schaider may recover for breach of contract against Magnuson because Magnuson took control of the bar before Schaider was afforded his contractual right to cure defaults.

Magnuson also contends the trial court's order was correct because the evidence shows that Schaider abandoned the leased premises. The crux of Magnuson's argument is that Schaider failed to reopen the business after he returned from Hawaii on June 15, 1986, and that he surrendered the premises on July 1, 1986. Magnuson points to the following facts: Schaider let his dramshop insurance expire; Schaider did not attempt to pay the money owed; Schaider did not attempt to reopen the bar when he returned from Hawaii; Schaider sold some of his inventory when he returned from Hawaii; Schaider signed a consent form which allowed Stuart Magnuson to enter the premises to clean it and change the locks on July 1, 1986.

Magnuson's argument is not persuasive because it ignores the main theory upon which Schaider brought suit for breach of contract, that Magnuson closed the bar on June 6, 1986. The facts asserted by Magnuson clearly show that Schaider was having difficulties with the bar business, but these facts do not show that Schaider was responsible for closing his bar June 6, 1986. If Magnuson closed the bar on

June 6, 1986, then Magnuson breached the contract on this date, and Schaider's failure to reopen the bar or his failure to make the payments after this date are not relevant to this cause of action.

NO. 87—L—225 — INDUSTRIES V. SCHAIDER

In this case, Industries sued Schaider for back rent owed on the lease, and for fraudulent misrepresentation. The court granted summary judgment to Industries on both counts, awarding Industries $9,200 for four months' rent, April to July 1986, and $10,924.00 on count II.

■■■ Schaider admitted in his answer that he had not paid rent for three months. Schaider filed a motion to dismiss this count, however, alleging that the cause of action raised by him in No. 87—L—210 required dismissal of this count. The trial judge denied this motion. On appeal, Schaider contends this was error. There is no merit to this contention. Section 2—619 provides for dismissal of a complaint where "there is another action pending between the same parties for the same cause" (Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a)(3)). Here, Schaider's cause of action in No. 87—L—210, that Industries breached the lease in June by taking control of the property without providing an opportunity to cure, is not the same cause alleged in Industries complaint, that Schaider failed to pay rent.

■■■ Next, Schaider contends the trial court erred in granting summary judgment on this count for Industries because his alleged cause of action in No. 87—L—210 excused the obligation to pay rent. In No. 87—L—210 Schaider alleged a breach by Industries on June 6, 1986. We agree that Schaider's complaint raises a material question as to his liability for rent after June 6, 1986; however, we find no genuine issue of material fact concerning Schaider's liability for rent owed before June 6, 1986. Since it is undisputed that Schaider owed rent for April and May 1986, we affirm the summary judgment for Industries for rent owed in April and May totaling $4,600 and remand for further proceedings concerning rent owed in June and July 1986.

Next, Schaider contends the trial court erred in granting summary judgment to Industries on count II of No. 87—L—225. In this count, Industries alleged a cause of action against Schaider for fraudulent misrepresentation. In his defense to the summary judgment motion and on appeal Schaider contends the trial court erred because Industries failed to establish the material elements of fraudulent misrepresentation.

■■■ In *International Meat Co. v. Bockos* (1987), 157 Ill. App. 3d 810, 815, the court set out the elements for common-law fraud. Plain-

tiff must prove the following:

"(1) the defendant made a statement, (2) of a material nature, (3) which was untrue, and (4) which was known by defendant to be untrue, or was made in culpable ignorance of its truth or falsity; and (5) was made for the purpose of inducing reliance by plaintiff, (6) was actually relied upon by plaintiff, and (7) resulted in plaintiff's injury." (157 Ill. App. 3d at 815.)

Furthermore, a promise to perform a future act, even though made without a present intention to perform, is generally insufficient to constitute fraud. (*Bockos*, 157 Ill. App. 3d at 815; *Roda v. Berko* (1948), 401 Ill. 335, 340.) An exception to this rule occurs where the false promise to do something in the future is the scheme or device used to accomplish the fraud. *Bockos*, 157 Ill. App. 3d at 815; *Berko*, 401 Ill. at 340.

Industries alleged Schaider fraudulently represented that he was making improvements to the premises owned by Industries. In support of this allegation, Industries attached an estimate for bathroom improvements submitted by Telamon, Inc., which Schaider delivered to Industries. Telamon estimated the job would cost $10,924. Industries alleged Schaider fraudulently and with intent to deceive induced it to entrust Schaider with $10,924 to act as a fiduciary to transfer this amount to Telamon, Inc. A copy of a check made out to Keystone, Inc., for $10,924 was attached to the complaint. It is not disputed that this check was delivered to Schaider as president of Keystone, Inc. Industries alleged Schaider had no intent to transmit the funds to Telamon, Inc., and deposited the funds to his own account, never paying Telamon, Inc., or any other contractor. In support of its motion for summary judgment, Industries attached a copy of a petition for a lien made on the premises by Robert C. Letourneau for work done on the bathrooms in the amount of $9,558. It also attached a copy of Schaider's bank statement which indicated that the $10,924 was deposited in the Keystone, Inc., account. The statement indicates that several withdrawals were made from the $10,924 deposited. It is noted that these copies were not verified.

This evidence is not sufficient to grant summary judgment to Industries. Industries contends that the material untrue statement made by Schaider was that he was making improvements to the bathrooms. The evidence does not prove this to be an undisputed fact. To the contrary, the evidence as indicated by the petition for mechanic's lien filed by Letourneau shows that improvements to the bathroom were made. That the improvements were made by someone other than Telamon, Inc., does not prove that Schaider made a material un-

true statement to Industries. Industries contends that the evidence shows that Schaider made a material untrue statement in that he promised to use the $10,924 to pay Telamon. While it is undisputed that defendant received the check for the purpose of applying it to pay for bathroom remodeling, it is not undisputed that Schaider induced Industries to give him this check knowing that he would not use the money for bathroom improvements or with culpable ignorance of this fact. None of the evidence submitted by Industries establishes this intent by Schaider. The fact that the bank statement shows that Schaider deposited the check into his corporate account and withdrew funds from the check to pay for bills unrelated to remodeling the bathroom does not prove that Schaider accepted the check knowing he would not use it to pay for the bathroom. The trial court erred in granting summary judgment to Industries on this count.

NO. 87—L—192 — MAGNUSON V. SCHAIDER

In No. 87—L—192, a confession on a $100,000 judgment note was entered against Schaider on April 3, 1987, for $164,171.67. The judgment sum was derived by awarding Magnuson $93,536.60 in principal, $43,273.21 in interest, and $27,361.80 in attorney fees. Schaider filed a motion to open up the judgment, alleging affirmative defenses. Schaider also filed a motion for involuntary dismissal, alleging grounds stated in a complaint Schaider filed against Magnuson for breach of contract. The court dismissed the affirmative defenses and granted summary judgment for Magnuson, confirming the confession judgment.

Schaider contends the trial court erred in dismissing his affirmative defenses to No. 87—L—192 and granting summary judgment in favor of Industries. Schaider contends on appeal that there are questions of fact regarding his liability under the note and the amount of recovery under the note. First, Schaider contends that the issues raised by his suit in No. 87—L—210 may prove that he is not liable on the note. Second, Schaider contends that the recovery of all stock and collateral by Magnuson precludes full payment of the amount owed on the promissory note. These contentions bring out a question of contract construction which Schaider touched on briefly and Magnuson failed to address entirely.

The stock purchase agreement provides that Schaider will pay $170,000 for all of the stock of The Mating Place, Inc., the bar being purchased. The agreement stated that the promissory note would be secured by a purchase money security interest covering all the assets of the bar. The stock purchase agreement, as already discussed, pro-

vided Schaider with a right to cure within 15 days after receiving notice of default. The installment judgment note signed by Schaider allowed the holder of the note to without notice declare the entire balance immediately due and payable upon default.

■■■ Schaider correctly argues, as already discussed, that the separate agreements in this case must be construed together as one agreement. (See *Peters & Fulk Realtors, Inc. v. Shah* (1986), 140 Ill. App. 3d 301, 305, quoting *Tepfer v. Deerfield Savings & Loan Association* (1983), 118 Ill. App. 3d 77, 80.) This rule is applied by statute to negotiable instruments. Section 3–119(1) of the Uniform Commercial Codes states in relevant part:

> "As between the obligor and his immediate obligee or any transferee the terms of an instrument may be modified or affected by any other written agreement executed as a part of the same transaction ***." Ill. Rev. Stat. 1987, ch. 26, par. 3–119(1).

■■■■ ■ Thus, an agreement or condition inserted in one document is an effective part of the contract of the parties, although not found in the other document, provided there is no inconsistency. (*Peters*, 140 Ill. App. 3d at 306; *Tepfer*, 118 Ill. App. 3d at 81.) Schaider contends that Magnuson's breach of the stock purchase agreement by failing to provide time to cure precludes Magnuson from recovering on the judgment note. The cure provision of the stock purchase agreement is inconsistent with the judgment note, which allows the holder to without notice declare the entire balance immediately due upon any default. It has been held that where a contemporaneous agreement is inconsistent with a note, the provisions in conflict with the note will not be construed as part of the note. (See 11 Am. Jur. 2d *Bills and Notes* §72, at 98 (1963), citing *White v. Miller* (1893), 52 Minn. 367, 54 N.W. 736; *Misso v. National Bank of Commerce* (1957), 231 Miss. 249, 95 So. 2d 124; *Peavy-Moore Lumber Co. v. First National Bank* (1939), 133 Tex. 467, 128 S.W.2d 1158; 125 A.L.R. 1185 (1940).) Thus, in this case, Schaider's allegation that he is not liable under the note because of breach of the stock purchase agreement is not valid, since the note allows recovery of the full amount without providing notice or a right to cure.

■■■ Schaider's second contention is that Magnuson was not entitled to the full amount owed on the note because Magnuson retained the collateral on the note, and section 9–504 of the Commercial Code requires the judgment amount be reduced. (Ill. Rev. Stat. 1987, ch. 26, par. 9–504(1)(b).) On appeal, Magnuson contends that this contention is waived because Schaider failed to raise it at trial. The record,

however, shows that this was raised by Schaider. Schaider alleged in his affirmative defense and in defense of the summary judgment motion that Magnuson recovered all the assets of the business, which was the full consideration for the note. Schaider did not specifically rely on the Uniform Commercial Code in his arguments at the trial level, but his assertions sufficiently raised the issue below.

The question raised by Schaider again requires construction of the stock purchase agreement and the judgment note. The judgment note does not mention anything about collateral; however, the stock purchase agreement requires Schaider to furnish Magnuson with a security agreement and a purchase money security interest for all the assets of the company as collateral for the note. Furthermore, the stock purchase agreement provides that the collateral will be released upon payment of the note. It states:

"Upon the payment in full of the Promissory Note referred to in Paragraph 3, the seller shall execute and deliver to the Buyers, a release of collateral and termination statement in the form required by the Secretary of State of the State of Illinois *** ."

In this case the note and the stock purchase agreement may be read together consistently. The stock purchase agreement makes clear that the assets of the business were to serve as collateral for the note. It also makes clear that upon payment of the note in full, the seller must release its right to the collateral. Since the note does not mention anything about collateral, the two documents are not directly conflicting. It is clear that, where the seller here obtained a judgment for the total amount due on the note, he cannot also retain the collateral. The Uniform Commercial Code provides that a secured party may either sell or otherwise dispose of the collateral and apply the proceeds to his reasonable expenses for disposing of the collateral and then to the satisfaction of indebtedness (Ill. Rev. Stat. 1987, ch. 26, pars. 9—504(1)(a), (1)(b)), or the seller may retain the collateral in satisfaction of the obligation (Ill. Rev. Stat. 1987, ch. 26, par. 9—505(2)). The evidence shows that Magnuson retained at least some of the assets of the business purchased by Schaider that were to stand as collateral. Stuart Magnuson stated that Industries repossessed the premises on July 1, 1986, after Schaider signed the consent agreement. He also stated that he is the sole shareholder of a company now operating a bar on the premises. It is not clear how much of the collateral Magnuson repossessed or what he did with it after repossession. These are facts that should have been brought out at the trial level.

A judgment by confession should be opened where a legal

defense has been raised that existed before the judgment was entered. (*Interstate Bank v. Sluis* (1979), 79 Ill. App. 3d 1039, 1043.) The bar premises were repossessed by Magnuson on July 1, 1986. The judgment of confession was entered April 3, 1987. Thus, the issue of repossession of collateral arose prior to the judgment of confession April 3, 1987. The issue of satisfaction by retention of the collateral was a legitimate defense that should have been entertained at trial. The trial court erred in dismissing this affirmative defense and granting Magnuson summary judgment for the total amount due on the note.

■■■ ■ Lastly, Schaider contends the $27,361.80 attorney fee awarded to Magnuson on the confession of judgment was error because it was determined by the circuit clerk based on a fee schedule. Magnuson admits this fact on appeal. In *Larkin Bank v. Ishak* (1976), 43 Ill. App. 3d 918, 921, this court held that attorney fees may not be based on a fee schedule set by the county bar association. Rather, attorney fees "should be based upon the circumstances of the case, including the time expended, the complexity of the issues presented, the work involved and the expertise of the lawyer." (*Larkin Bank*, 43 Ill. App. 3d at 921.) The record here is devoid of proof of services rendered by Magnuson's attorney. There is no evidence of the hours spent on the case, the hourly rate charged, or any other circumstances involved with services rendered. The award of attorney fees is reversed, and the cause is remanded for proof of the services rendered.

In summary we make the following rulings:

(1) No. 87—L—210 — Schaider v. Magnuson *et al.*

(a) the dismissal of counts I, II, IV, and V is reversed and the cause remanded because the defendant's motion failed to affirmatively defeat plaintiff's claim;

(b) the summary judgment entered for defendant on count III is reversed and the cause remanded because there exists a genuine question of material fact as to whether defendant closed plaintiff's bar on June 6, 1986, and took possession of the premises and personal property before affording plaintiff his contractual right to cure defaults.

(2) No. 87—L—225 — Industries v. Schaider

(a) the order denying Schaider's motion to dismiss count I of Industries' complaint for rent owed by Schaider is affirmed;

(b) the summary judgment entered for Industries for four months' rent is affirmed in part and remanded in part. The order is affirmed for two months' rent, April and May, totaling $4,600, but remanded for further proceedings concerning rent owed in June and July;

(c) the decision granting Magnuson summary judgment for $10,924 for fraudulent misrepresentation is reversed and the cause remanded.

(3) No. 87—L—192 — Magnuson v. Schaider

(a) the order dismissing Schaider's defense to the confession judgment is reversed and the cause remanded since retention of the collateral barred full recovery on the note;

(b) the summary judgment for the total amount due on the note is reversed and the cause remanded to determine the collateral retained by Magnuson and to determine the effect of this retention of collateral on the amount owed on the note pursuant to either sections 9—504(1)(a), (1)(b)) or section 9—505(2) of the Uniform Commercial Code (Ill. Rev. Stat. 1987, ch. 26, pars. 9—504(1)(a), (1)(b), 9—505(2));

(c) the award of attorney fees based on a fee schedule is reversed, and the cause is remanded for a determination of the work involved in securing the confession of the installment judgment note.

Affirmed in part; reversed in part and remanded.

NASH and INGLIS, JJ., concur.