2021 IL App (1st) 201284-U

No. 1-20-1284

Order filed October 8, 2021

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| VILLAGE REALTY, INC., an Illinois Corporation, f/k/a Carlino Enterprises, Inc., | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | |
| v. | Nos. 17 CH 16907 <br> 17 CH 16908 <br> 17 CH 16949 |
| RICHARD CARLINO, KAREN CARLINO, DANIEL CARLINO, and REALTYONE AND ASSOCIATES, LLC, | 17 CH 16969 <br> 17 CH 16970 |
| Defendants-Appellees. | Honorable <br> Raymond W. Mitchell, <br> Judge, Presiding. |

JUSTICE ODEN JOHNSON delivered the judgment of the court.
Presiding Justice Daniel Pierce and Justice Mary Mikva concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirmed the circuit court's grant of partial summary judgment in favor of defendants where the parties' stock purchase agreement allowed for the performance of obligations after the closing date and, thus, defendants were entitled to receive the releases conditioned on the performance of their obligations.

¶ 2 Plaintiff Village Realty, Inc. (Village Realty) f/k/a Carlino Enterprises, Inc. appeals an order of the circuit court of Cook County which granted partial summary judgment in favor of defendants Richard Carlino (Richard), Karen Carlino (Karen), Daniel Carlino (Daniel) and Realtyone and Associates (Realtyone) (collectively defendants). On appeal, Village Realty contends that the circuit court erred in: (1) granting partial summary judgment in favor of defendants, (2) concluding that it waived defendants' obligation to timely meet obligations pursuant to the parties' stock purchase agreement, and (3) ordering that releases be delivered to defendants. For the following reasons, we affirm.

¶ 3 According to the record, Village Realty filed an amended complaint on May 31, 2019, in consolidated cases 17 CH 16907, 17 CH 16908, 17 CH 16949, 17 CH 16969, and 17 CH 16970. In its amended complaint, Village Realty sought damages from defendants that arose from the transfer of company assets to Richard and Karen and the conversion of real estate listing agreements and commissions that it was entitled to receive. Village Realty sought compensatory and punitive damages under the theories of conversion, breach of fiduciary duty, unjust enrichment, aiding and abetting, conspiracy, and interference with economic advantage. Village Realty also sought a declaratory judgment that defendants were not entitled to certain releases provided for in the parties' stock purchase agreement (purchase agreement).

¶ 4 Briefly stated, Village Realty is an Illinois corporation licensed to do business as real estate broker that was once owned by Richard and Karen as Carlino Enterprises, Inc. (CE) and is now owned by Michael Glenn (Glenn). Richard and Karen are both licensed real estate agents; Richard is also a real estate broker. Daniel, their son, is also a licensed real estate agent who was previously

affiliated with CE and is now affiliated with Realtyone, which Village Realty believed that he owned.

¶ 5 On February 3, 2017, seven creditors of CE filed an involuntary bankruptcy petition against CE in the United States Bankruptcy Court for the Northern District of Illinois. When the bankruptcy case was commenced, Karen was the sole shareholder, director and president of CE and Richard was the managing broker. On May 11, 2017, Karen agreed to sell her shares of CE to Glenn, pursuant to the terms of the purchase agreement. On June 30, 2017, the parties closed the sale of CE. As of the closing date, Karen and Richard resigned from CE and Glen became the sole owner, officer, director and managing broker. No funds or bank deposits were remitted to Glen at the closing. Several days after the closing, Karen and Richard transferred funds into a new escrow account from CE's previous escrow account, purportedly in an amount equal to the amount of escrow deposits CE had received from its clients. There were no other transfers to Glenn or Village Realty of any other funds or bank deposits owned by CE after the closing date. It is undisputed that Richard and Karen failed to complete all of their required obligations under the purchase agreement, namely, their tax obligations.

¶ 6 The declaratory judgment action for specific performance regarding the delivery of releases as required by the purchase agreement was originally filed on December 21, 2017, by Glenn against Richard and Karen under case number 17 CH 16907. In that case, the parties filed cross motions for summary judgment. Glenn's motion for summary judgment sought, in part, declarations that Richard and Karen did not timely fulfill all of their obligations under the purchase agreement and as such, they were not entitled to receive the seller parties' releases from the escrowee. Richard and Karen's summary judgment motion sought, in part, a declaration that once

they fulfilled their tax obligations as set forth in the purchase agreement, they would be entitled to delivery of the seller parties' releases from the escrowee.

¶ 7    In connection with those summary judgment motions, the parties entered into and filed with the court a stipulation of facts on January 11, 2019, in which they agreed that both parties had certain obligations under the purchase agreement that should have been completed as of the closing date of June 30, 2017, and that Richard and Karen had not fulfilled all of their obligations as sellers. Specifically, Richard and Karen did not file CE's outstanding tax returns for 2011 through 2016, file a final subchapter S tax or information return as of June 30, 2017, or terminate CE's subchapter S tax election.

¶ 8    At the closing, the parties' respective counsels orally agreed that Richard and Karen would have until October 1, 2017, to file CE's tax returns and pay all taxes due as required under section C-2 of the purchase agreement, and to terminate CE's subchapter S election and file any required tax return or informational return. Richard and Karen did not comply with the terms of the oral agreement, nor had they complied by the date of the entry of the stipulated facts.

¶ 9    Section F-1 of the purchase agreement provided for mutual releases and transfer of shares upon execution of the purchase agreement.  Specifically, Richard and Karen would deposit the following documents with the escrowee: (1) resignation documents, (2) transfer documents evidencing the assignment, (3) sellers' release of buyer indemnified parties, (4) company release of sellers from all claims against sellers other than claims arising from breach of the purchase agreement, (5) a release from South Suburban Investment Group, LLC (SSIG) releasing CE from all claims, (6) a release from CE to SSIG, (7) a release from Daniel to CE, and (8) share transfer

documents. Upon execution of the purchase agreement, Richard and Karen deposited all required releases with the escrowee. These releases are the subject of this appeal.

¶ 10    Section F-2 of the purchase agreement required Glenn to deposit with the escrowee (1) a release of the sellers against all claims except breach of the purchase agreement and (2) a release from Trisons Holdings, LLC releasing sellers from all claims. Glenn deposited the required releases with the escrowee when the purchase agreement was executed.

¶ 11    Section F-3 of the purchase agreement provided that on the closing date, the escrowee would deliver the documents deposited with him by the parties. Delivery of documents to the parties was contingent on their fulfillment of all of their respective obligations under the purchase agreement. On the closing date, Glenn received all of the documents held for him in escrow, while Richard and Karen did not receive any escrowed documents.

¶ 12    The parties did not execute any amendments or modifications to the purchase agreement as required by Section U of the purchase agreement in order to change its terms. Further, section V of the purchase agreement stated that it was the entire agreement between the parties.

¶ 13    On May 17, 2019, the circuit court granted Glenn's summary judgment motion for specific performance (17 CH 16907) and denied Richard and Karen's summary judgment motion, in a written memorandum order. The circuit court however, struck both parties' requests for declaratory relief on the basis that plaintiff's one-count, specific performance complaint did not seek a declaratory judgment, nor did it seek any determination regarding defendants' releases. The court ordered Richard and Karen to perform all outstanding tax obligations under section C of the purchase agreement, provide an accounting of the escrow account, produce all required bank

statements for company bank accounts and produce all organizational documents or an affidavit of completeness asserting that all documents were produced. [1]

¶ 14    Village Realty alleged in the consolidated action that because Richard and Karen failed to timely fulfil their obligations under the purchase agreement, they were not entitled to the releases. Village Realty sought a declaration that Richard and Karen were not entitled to the releases, nor would they be entitled to receive them even after they specifically performed their obligations under the purchase agreement as ordered by the circuit court in the summary judgment order.

¶ 15    In addition to filing an answer, defendants sought a declaratory judgment. Defendants stated that there was an actual controversy between the parties under the purchase agreement because Glenn and the escrowee claimed that defendants were not entitled to the releases because they did not perform their obligations in a timely manner, while defendants claimed that once their obligations were performed, they were entitled to the releases. Defendants sought a declaration that once they fulfilled their obligations under the purchase agreement, they would be entitled to delivery of the releases from escrow.

¶ 16    On July 30, 2019, Village Realty filed a motion for partial summary judgment on count IX of the amended complaint, declaratory relief with regard to delivery of releases. Specifically, Village Realty sought a declaration that defendants were not entitled to the releases because they failed to timely comply with their obligations under the purchase agreement. In response, defendants argued that Village Realty waived strict compliance with the timing of their performance by proceeding with the transaction. On December 30, 2019, the circuit court entered

---

[1] The judgment order was modified on May 30, 2019, to provide that defendants would perform their obligations on or before July 12, 2019.

a written memorandum order denying Village Realty's motion for partial summary judgment based on waiver. The court also noted that Glenn had pursued his remedy for Richard and Karen's noncompliance- he brought a suit for specific performance- and judgment was entered in his favor.

¶ 17 On February 27, 2020, defendants filed a motion for summary judgment on its counterclaim for declaratory judgment, alleging that they completed all of their obligations under the purchase agreement and were thus entitled to receive the releases.

¶ 18 On May 13, 2020, the circuit court entered a written memorandum order that defendants were entitled to delivery of the escrowed documents based on Glenn's waiver that was previously determined by court order on December 30, 2019, and further that defendants fully complied with its obligations under the purchase agreement. The court granted defendants' motion for partial summary judgment and ordered Village Realty to deliver the releases to defendants.

¶ 19 Subsequently, Village Realty moved to voluntarily dismissed counts I, II and III of its amended complaint pursuant to a settlement agreement on October 27, 2020. An agreed order was entered that: (1) granted Village Realty's motion to voluntarily dismiss counts I, II and III; (2) found that the two prior interlocutory orders (a) denying Village Realty's motion for partial summary judgment on count IX on December 30, 2019, and (b) granting defendants' motion for partial summary judgment on May 13, 2020, were final and appealable under Supreme Court Rule 304(a) (effective Mar. 16, 2016); and (3) if the interlocutory summary judgment orders were reversed on appeal, plaintiff would be entitled to reinstate counts I, II, and III of the amended complaint, and any payments defendants would have paid pursuant to the settlement agreement would be credited against any subsequent judgment in Village Realty's favor. The order was

amended on November 4, 2020, to add that the case was dismissed in its entirety. Village Realty's timely notice of appeal was filed on November 25, 2020.

¶ 20    On appeal, Village Realty contends that the circuit court erred by: (1) granting defendants' motion for partial summary judgment, (2) declaring that Glenn waived the timely performance of obligations due by defendants under the purchase agreement, and (3) ordering that the release documents held with the escrowee be delivered to defendants. Village Realty argues that there is no factual dispute; Richard and Karen failed to fulfil their obligations under the purchase agreement by the closing date of June 30, 2017, nor did they do so by the oral agreement date of October 1, 2017. Although the tax obligations were ultimately completed, they were not completed timely, and accordingly, defendants are not entitled to the releases. Village Realty contends that the circuit court misconstrued the parties' arrangement; the oral agreement was made at the closing, thus Richard and Karen's obligations under the purchase agreement were extended to October 1, 2017, which was 90 days after the closing.  Thus, there was no waiver in proceeding with the closing.

¶ 21    Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits on file, when taken together in the light most favorable to the nonmovant, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 2018); *Fremont Casualty Insurance Co. v. Ace-Chicago Great Dane Corp.*, 317 Ill. App. 3d 67, 73 (2000).  Our review of the trial court's ruling on a motion for summary judgment is *de novo*.  *Fremont Casualty*, 317 Ill. App. 3d at 73.

¶ 22    The single issue in this case is whether defendants were entitled to receive the releases that were held in escrow when they failed to timely complete their obligations under the purchase

agreement. In order to determine whether defendants were properly entitled to the releases pursuant to the purchase agreement, we must first determine the rights of the parties under the purchase agreement.

¶ 23    In construing a contract, a court seeks to ascertain the intent of the parties. *Rothner v. Mermelstein*, 219 Ill. App. 3d 502, 508 (1991). Courts presume that a written agreement speaks the intent of the signing parties (*id.*) and their intentions must be determined from the language used (*W.W. Vincent and Co. v. First Colony Life Insurance Co.*, 351 Ill. App. 3d 752, 757 (2004)). Where the question involves one of contract construction, a court of review may ascertain the meaning of contract provisions from the instrument itself as a matter of law, absent an ambiguity in the contract. *Magnuson v. Schaider*, 183 Ill. App. 3d 344, 357 (1989). A contract is ambiguous if it is subject to more than one reasonable interpretation. *Bunge Corp. v. Northern Trust Co.*, 252 Ill. App. 3d 485, 493 (1993). The existence of an ambiguity in a contract must be determined as a question of law by the court, and if the terms of an alleged contract are ambiguous or are capable of more than one interpretation, parol evidence is admissible to ascertain the parties' intent. *Id.* However, a document is not ambiguous merely because the parties fail to agree upon its meaning. *Id.* In determining the intent of an unambiguous instrument, the court must consider the entire document giving words their plain and ordinary meaning. *Id.*

¶ 24    In this case, Village Realty does not argue that the stock purchase agreement is ambiguous; rather, it argues that defendants failed to strictly comply with its terms by failing to timely comply with their tax obligations related to CE in order to receive the releases. We disagree with that interpretation.

¶ 25    It is clear from our examination of the purchase agreement that the parties intended for all obligations to be completed as of the closing date, which was June 30, 2017. In support of this conclusion, we look to the specific language contained in the purchase agreement in section F-3 related to the releases:

> "On the Closing Date, the Escrowee will deliver the documents deposited with him by Sellers and Buyer as follows: (a) Provided Sellers have timely fulfilled all of Sellers' obligations, the Escrowee will deliver the following documents to Sellers * * *."

¶ 26    The purchase agreement did not define "timely" and did not provide a remedy for default for obligations performed beyond the closing date. Further, it contained a provision that the written agreement was the entire agreement between the parties (section V). Additionally, the agreement provided that it could only be amended in writing (section U).

¶ 27    We do not find the language of the purchase agreement to be ambiguous or vague. That said, Village Realty's contention that the parties orally agreed at the closing to amend the purchase agreement and extend Richard and Karen's obligations for performance until October 1, 2017, is rejected as it was in direct contradiction with the terms of the agreement with respect to amendments. Thus, we find that any such oral agreement was invalid, and the plain language of the contract applied. As such, the parties were required to perform their obligations by the closing date, or June 30, 2017.

¶ 28    However, that does not end our inquiry. Section P of the purchase agreement provided that:

> "On and after the Closing, upon the reasonable request of Buyer, Sellers shall do all such further acts and execute, acknowledge and deliver all such further instruments and documents as may be necessary or desirable to convey and transfer to, and vest in, Buyer,

and to protect Buyer's right, title, and interest in and to the Shares, and, without unreasonable expense to Seller, as may otherwise be appropriate to carry out the transactions provided for in this Agreement."

¶ 29     As noted, section F-3 required that the escrow agent tender the releases to the sellers at the closing, provided that their obligations were timely completed. Additionally, section P provided that sellers could tender documents after the closing for conveyance and protection of the buyer's rights or to "*carry out the transactions provided for in this Agreement*." (Emphasis added). Therefore, we conclude that the sellers were allowed to perform transactions provided for by the purchase agreement after the closing date to carry out the transactions provided for in the agreement without penalty. Here, it is undisputed that defendants complied with all of their obligations under the purchase agreement, albeit after the closing date, which was permissible under the plain language of section P. A reviewing court can affirm the circuit court's judgment based on any ground supported by the record. *Bank of America, N.A. v. Luca*, 2013 IL App (3d) 120601, ¶ 14. Accordingly, we find that the circuit court properly granted partial summary judgment in favor of defendants and properly ordered that the escrow agent tender the releases to defendants.

¶ 30     For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 31     Affirmed.