ZIMMERMAN FORD, INC., Plaintiff-Appellee, *v.* FRANKLIN CHENEY *et al.,* Defendants-Appellants.

(No. 70-171; ▮▮▮▮▮▮▮▮

Second District—May 28, 1971.

Geister, Schnell, Richards & Brown, of Elgin, (Van R. Richards, Jr., of counsel,) for appellants.

Redman, Shearer, O'Brien & Blood, of St. Charles, (Richard D. Shearer, of counsel,) for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Defendant, Winnie Ambrose, appeals from a judgment in the amount of $1,495, which was entered against both defendants under a confession clause in a retail installment sales contract. Thereafter this judgment was vacated and later confirmed after a hearing on the merits.

She claims there was a lack of consideration for her signature, that there was a failure by plaintiff to allege and prove its capacity to sue, and that there was a violation of the provision of the Commercial Code proscribing the signing of such contracts in blank (Ill. Rev. Stat. 1965, ch. 121½, par. 229).

The evidence showed that Franklin Cheney, a grandson of Winnie

Ambrose, entered into a retail installment sales contract with plaintiff to purchase an automobile. A co-signer was required, and the contract was returned to the plaintiff by Cheney with the purported additional signature of Winnie Ambrose. Later Cheney defaulted in his payments, and the collecting bank notified plaintiff that Winnie Ambrose's signature was a forgery. Thereafter plaintiff obtained Mrs. Ambrose's signature on a "replacement contract", which the trial court found to be identical in its terms with the original contract.

Mrs. Ambrose testified that she was given a blank form and was told only that it was "about the car" and that her grandson could not keep the car if she did not sign. She acknowledged that she knew when she signed the contract that the purported signature on the first contract was not hers. There was testimony that when she signed the contract, Mrs. Ambrose said she would do anything to help keep her grandson out of trouble. At another point in her testimony, Mrs. Ambrose acknowledged that she was asked if she would sign papers so the boy could keep the car and that she signed for that reason.

■■ On these facts, defendant argues that she received no consideration to support her promise to pay the pre-existing debt of Cheney. However, we find sufficient evidence of mutual consideration, consisting of plaintiff's implied promise to forbear from repossessing the car in exchange for defendant's promise to pay if the grandson did not. An agreement to forbear need not be in express terms or for an exact period of time; the terms may be gathered from the surrounding circumstances from which forbearance for a reasonable time may be implied. *McMicken v. Safford* (1902), 197 Ill. 540, 546; *B. & R. Brew. Co. v. Motycka* (1911), 163 Ill.App. 238, 241. See also Anno. 78 A.L.R.2d 1414.

■■ The argument that the court erred in considering extrinsic evidence of consideration is not persuasive. Defendant refers to a provision in the contract, "This contract contains the entire consideration between seller and buyer". The provision is not relevant to the issue of consideration between the seller and one who is not the buyer but who is rather, under the admitted facts, a guarantor.

■■ Defendant next argues that the consideration, in any event, was tainted with illegality which rendered the contract unenforceable against her. We have not set out the testimony in detail, but it is clear to us from our examination of the record that plaintiff was solely interested in recovering its loss and bargained for Mrs. Ambrose's signature for that purpose. The evidence falls far short of showing that the parties were agreeing to pervert justice by compounding a crime. (See *Rieman v. Morrison* (1914), 264 Ill. 279, 283, 284.) The finding by the court that defendant signed believing it would prevent prosecution of her grand-

son is distinguishable in its legal effect from a finding that a creditor has promised to forbear from prosecuting a crime. (*Paige v. Hieronymus* (1901), 192 Ill. 546, 560; *Tramblay v. Hyde Park State Bank* (1929), 336 Ill. 80, 90, 91.) Moreover, there was clearly no proof of the criminal offense beyond a reasonable doubt. Where the defense of compounding a crime is relied upon to defeat an action, there is a burden to prove the alleged criminal offense beyond a reasonable doubt. *Rudolph Stecher Brewing Co. v. Carr* (1915), 194 Ill. App. 32, 37.

■■ Nor can defendant rely upon the defense of plaintiff's lack of capacity to sue to defeat the claim. The objection was neither raised in the motion and affidavit to open the judgment by confession nor in the answer subsequently filed. Defendant raised the question as to lack of proof of plaintiff's corporate capacity for the first time in her oral motion for a directed verdict at the close of plaintiff's proofs. Ruling was reserved, and apparently the next reference to the point is a general one made but not argued in defendant's written post-trial motion. In our view, the defense has not been properly preserved for review under these circumstances. See Ill. Rev. Stat. 1967, ch. 110, par. 48(1) (b); *Stanley v. Chastek* (1962), 34 Ill.App.2d 220, 230.

■■ Furthermore, defendant is estopped to deny the corporate existence of the plaintiff, which signed both contracts as, "Zimmerman Ford, Inc." When an agreement shows upon its face that it is executed as a corporation, there is prima facie evidence of corporate existence and of the defendant's dealing with it as such. *West Side Auction Co. v. Conn. Ins. Co.* (1900), 186 Ill. 156, 160; *Spreyne v. Garfield Lodge No. 1* (1904), 117 Ill.App. 253, 255. Defendant has cited *Cash Register Co. v. Riley Adv. System* (1928), 329 Ill. 403 in which the use of "Inc." was held to raise no presumption that an entity was a corporation. However, in that case the capacity of the party became the essential issue in determining priority of liens to purchased property, and the court concluded that the substantial evidence of purchase as an individual could not be overcome by the use of "Inc." Here, the right to recover was not dependent upon the capacity in which plaintiff contracted or sued, a circumstance which distinguishes the cases.

Mrs. Ambrose has also defended under the provisions of Ill. Rev. Stat. 1965, ch. 121½, par. 229 (which governed this transaction, entered into prior to the amendment of that statute in 1967). The statute provided that "No retail installment contract shall be enforceable by the seller when it contains blank spaces to be filled in after it has been signed by the buyer", (except for identification and date of first installment when signing was prior to delivery).

■■ The testimony relating to the condition of the "replacement

contract" is in conflict. The trial court made no finding that there were blanks but did find that the replacement contract was in like form and terms with the original contract. However, the manifest weight of the evidence indicates that when Mrs. Ambrose signed, there were some undesignated blank spaces in the contract which were to be filled in the next morning when plaintiff's secretary was available. Even in this view, the contract did not thereby become unenforceable, since the document was filled in according to the agreement of the parties. (*Grundy County Nat. Bank v. Westfall* (1970), 125 Ill.App.2d 254, 260.) The ostensible purpose of the statute is to prevent excessive charges or other fraud by a seller who fills in blanks in an unauthorized manner; and such statutes are not to be applied in a manner which would give a party a windfall. See *General Motors Acceptance Corporation v. Kyle* (Calif. 1960), 351 P.2d 768, so construing a statute similar to the one before us.

We, therefore, affirm.

Judgment affirmed.

T. MORAN, P. J., and ABRAHAMSON, J., concur.