FIRST NATIONAL BANK OF RED BUD, Plaintiff-Appellant, *v.* FRANCES CHAPMAN, Defendant-Appellee.

Fifth District   No. 76-255

Opinion filed August 2, 1977.

Charles L. Grotts, of Nehrt, Sachtleben & Fisher, of Red Bud, for appellant.

Jim D. Keehner, Ltd., of Belleville, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

Plaintiff bank appeals from a judgment rendered in favor of defendant in a suit upon a written contract of guaranty signed by defendant. The judgment is properly silent as to the court's reason for its decision but a letter from the court in the record indicates that reason to be that the evidence was insufficient to show or prove adequate consideration to support the contract of guaranty. We affirm.

Ray Chapman was a self-employed car dealer whose practice was to pledge automobile titles to the Bank of Red Bud to secure loans, the proceeds of which were to be used in running his business. On August 22, 1964, Chapman executed a note to the bank for $4,200. This note was a

renewal of prior obligations and was payable on demand or one year from the date of execution, bearing interest at 6% annum until maturity and 7% thereafter. On August 27, 1964, at the request of the bank, Mrs. Chapman, the defendant herein, executed a written guaranty to the bank which recited, in pertinent part:

"For Value Received and in consideration of advances made or to be made, or credit given or to be given, or other financial accommodation from time to time afforded or to be afforded to Ray Chapman * * * by First National Bank of Red Bud, * * * the undersigned hereby guarantees the full and prompt payment to said Bank at maturity and at all times thereafter of any and all indebtedness, obligations and liabilities of every kind and nature of said Debtor to said Bank * * * howsoever evidenced, whether now existing or hereafter created or arising, * * * and howsoever owned, held or acquired, whether through discount, overdraft, purchase, direct loan or as collateral, or otherwise; and the undersigned further agrees to pay all expenses, legal and/or otherwise (including court costs and attorneys' fees paid or incurred by said Bank in endeavoring to collect such indebtedness, obligations and liabilities, or any part thereof, and in enforcing this guaranty. The right of recovery, however, against the undersigned is limited to Twenty Thousand and no/100 Dollars ($20,000.00), plus interest on all loans and/or advances hereunder and all expenses hereinbefore mentioned.

* * *

The guaranty shall be a continuing, absolute and unconditional guaranty, and shall remain in full force and effect until written notice of its discontinuance shall be actually received by said Bank, and also until any and all said indebtedness, obligations and liabilities existing before receipt of such notice shall be fully paid. The death or dissolution of the undersigned shall not terminate this guaranty until notice of any such death or dissolution shall have been actually received by said Bank, nor until all of said indebtedness, obligations and liabilities existing before receipt of such notice shall be fully paid."

On December 21, 1965, Mr. Chapman executed a note to the bank in the principal amount of $10,414 identical in its terms to the $4,200 note of August 22, 1964. Although disputed by plaintiff in its brief, it appears that this note was also a renewal of antecedent debts. The legend "Renewal and consolidation of charge offs" is recited on the face of the note. On March 27, 1967, the bank obtained a judgment against Chapman for the amounts owing on these notes, $5,705.26 and $12,448.71 respectively. Thereafter Chapman made payments of $50 monthly from December

1967 until January 1971. These payments were applied to principal, leaving a balance owing of $12,213.98 when payments ceased. Mr. and Mrs. Chapman were divorced in 1972. On April 16, 1975, the bank filed suit against Mrs. Chapman to recover on the guaranty, demanding principal, interest and attorney's fees in a total amount of $19,925.45.

It can be seen that the guaranty agreement we consider is very broad in its application to all debts and obligations of the principal debtor. When the agreement states that it is executed in consideration of "advances made or to be made, or credit given or to be given, or other financial accommodation from time to time afforded or to be afforded" by the bank to the principal debtor, and that the defendant as its signor "guarantees the full and prompt payment * * * of any and all indebtedness, obligations and liabilities of every kind and nature of said Debtor to said Bank, * * * howsoever evidenced, whether now existing or hereafter created * * *" it is plain that it was intended to apply to past indebtedness which remained outstanding at the time the agreement was signed, as well as to future indebtedness to be incurred, or to any future "financial accommodation."

The keynote rule on the consideration necessary to support an agreement to guarantee the debt of another is well stated by Professor Corbin in 1A Corbin on Contracts §213, at 286-87 (1963):

> "In the great field of suretyship, it is beyond question that the debt or obligation of the principal obligor is not a sufficient basis for the enforcement of the promise of the surety or guarantor. If the promises of the principal and the surety are made simultaneously, they may be supported by a single consideration; the loan of money by the creditor to the principal is a sufficient consideration for the promises of both principal and surety. But for the promise of any surety that is made subsequently to the advancement of the money to the principal, there must be a new consideration. The fact that the loan has been made and the principal is indebted is not a sufficient reason for enforcement of the surety's subsequent promise."

■■ The Illinois cases have followed this rule, holding that where the agreement of guaranty is executed contemporaneously with the original note or obligation, the consideration for the note or obligation furnishes sufficient consideration for the agreement of guaranty (*Weger v. Robinson Nash Motor Co.*, 340 Ill. 81, 172 N.E. 7; *Munson v. Adams*, 89 Ill. 450), and that where a debt is incurred and thereafter a third party promises to pay or guarantee it, some additional consideration is necessary to support such promise. *Klein v. Currier*, 14 Ill. 237; *Anderson v. Norvill*, 10 Ill. App. 240; *Haven v. Chicago Sash, D. & B. Co.*, 96 Ill. App. 92; *Bassett v. Heiens*, 307 Ill. App. 426, 30 N.E.2d 528.

We must consider, then, whether any consideration was furnished by the plaintiff bank to the defendant for her guaranty. Generally speaking, whatever would be sufficient consideration to support any other kind of contract will be sufficient consideration to support a contract of guaranty. *Stern v. Gelder*, 224 Ill. App. 89; *Blue Island Brewing Co. v. Fraatz*, 123 Ill. App. 26.

Here, the $4,200 note was executed by Ray Chapman five days prior to the execution of the guaranty agreement and the $10,414 note approximately 16 months afterward. No argument is made by the plaintiff that the consideration for either of the notes was the consideration for the guaranty agreement. Accordingly, any consideration must be found elsewhere. Our examination of the record and the applicable authorities has disclosed none.

One of plaintiff's witnesses, an ex-cashier and vice president of the bank, testified that both notes in question were a renewal of old, previously incurred loans and obligations. Plaintiff's brief states that after the execution of the $4,200 note on August 24, 1964, and after the execution of the guaranty agreement by defendant on August 27, 1964, Ray Chapman continued the pledge of automobile titles in exchange for loans from plaintiff in the course of his used car business. We are unable to find any support for such statement in the record. The only testimony bearing upon this was that of the ex-cashier above set forth and it does not support the statement, it contradicts it. Plaintiff also points to an entry in its Exhibit 6, the account sheet kept for Ray Chapman, upon which the following entry appears "Charges Res. 12/21/65 $10,414.30." There is no explanation of the meaning of that entry in the record and the only testimony attempting to explain it is that of the ex-cashier, which we have alluded to. Furthermore, on the face of the note represented by that entry appears the legend "Renewal & Consolidation of charge offs." Thus, the evidence bearing directly upon the question refutes plaintiff's assertion that the $10,414.30 note which was executed subsequent to the giving of the guaranty agreement was for new or additional funds or credit extended.

The guaranty agreement began with the language, "For Value Received." However, this adds nothing to the case since the evidence bearing upon the question discloses that there was no value received. (*Bartholomae & Roesing Brewing & Malting Co. v. Motycka*, 163 Ill. App. 238.) Likewise the recital in the guaranty agreement that it is "in consideration of advances made or to be made, or credit given or to be given" is unavailing to plaintiff for the simple reason that although the consideration was recited, it was not furnished, nor does the evidence disclose that any other detriment suffered or advantage surrendered.

■■■ The only consideration that might possibly arise under the facts

presented is that of forbearance by the plaintiff to bring an action or other collection procedures against Ray Chapman, and plaintiff strenuously argues that forbearance is present here. Again, however, we find that the assertion is not sustained by the record. An agreement to forbear need not be in express terms or for an exact period of time; the terms may be gathered from the surrounding circumstances from which forbearance for a reasonable time may be implied. (*McMicken v. Safford*, 197 Ill. 540; *Bartholomae & Roesing Brewing & Malting Co. v. Motycka; Zimmerman Ford, Inc. v. Cheney*, 132 Ill. App. 2d 871, 271 N.E.2d 682.) As stated by Professor Corbin in 1 Corbin on Contracts, §144, at 625 (1963):

> "Forbearance by a creditor to sue his principal debtor is ample consideration for a promise by a third person to guarantee payment of the debt, if such actual forbearance was expressly or impliedly requested by the guarantor as the agreed equivalent for his promise."

The record here is devoid of testimony concerning any request for forbearance by defendant at the time she executed the agreement, nor was there any testimony even remotely bearing upon the matter of forbearance. There simply is no evidence presented from which it could be inferred that the guaranty agreement was executed in exchange for the bank's forbearance. The mere fact that the bank did in fact forbear is insufficient consideration if the such forbearance was not pursuant to an agreement between the parties for such forbearance. *Gilman v. Ferguson*, 116 Ill. App. 347; *Bartholomae & Roesing Brewing & Malting Co.*

The guaranty agreement also recites that it was given in consideration of "other financial accommodation to be given." We would not be so naive as to here attempt to define what "other financial accommodation" might mean. Suffice it to say that the only transaction between the parties that that phrase would encompass would be the execution of the $10,414.30 note on December 21, 1965. While there may well have been, and undoubtedly was, a financial accommodation present in this transaction, it is apparent to us, from the dearth of evidence bearing on the subject, that the accommodation was to the plaintiff, not to Ray Chapman. The only apparent purpose to be accomplished by the renewal and consolidation was an extension of the statute of limitations governing the time in which an action could be brought. This would be of as much, if not more, benefit to plaintiff as it would to defendant. There is no evidence to show or even tend to show that it was for the benefit of either the plaintiff or Ray Chapman. Accordingly, the finding of the trial court in this regard must be affirmed.

In this case there was no testimony concerning the expectations of the parties. There was no evidence concerning any conversation taking place

at the time the guaranty was executed from which an agreement to forbear, either express or implied, can be found. The only testimony by the bank's witness was that he brought the document to Mrs. Chapman and asked her to sign it, which she did. We believe on this record the trial court was correct in finding that there was not sufficient consideration to support the guaranty.

In the view we take of the case it is not necessary to consider the defendant's arguments concerning other defenses to the enforcement of the guaranty and the application of the statute of limitations. The judgment of the circuit court is therefore affirmed.

Affirmed.

CARTER, P. J., and G. J. MORAN, J., concur.