RICHARD FINN *et al.*, Plaintiffs-Appellees, v. HERITAGE BANK & TRUST COMPANY, Defendant-Appellant.

Third District   No. 3—88—0037

Opinion filed January 10, 1989.

Craig T. Wright, of Wright & Babcock, Ltd., of Joliet (Sidney Z. Karasik, of counsel), for appellant.

Robert J. Baron, of Rooks, Pitts & Poust, of Joliet (George J. Vosicky, of counsel), for appellees.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

Plaintiff Richard Finn filed suit against the defendant Heritage Bank and Trust Company, Inc. (Heritage), seeking relief from a guaranty Finn signed on a bank loan made by Heritage to Finn's cousin. The trial court entered judgment in favor of Finn, declaring the plaintiff's guaranty null and void.

On appeal Heritage argues the trial court erred in finding there was no consideration for Finn's guarantees for his cousin's loans. Heritage also contends the doctrine of promissory estoppel precluded Finn's rescission, and that Finn's contentions are barred by *laches*. Because of the view we take with regard to Heritage's consideration argument, it is not necessary to discuss the defendant's remaining contentions.

Thomas F. Guilbault, Finn's cousin, requested a $75,000 loan from Heritage Bank. As a part of the request, Guilbault was required to complete a "personal loan statement." After reviewing the Guilbault file, bank president, and close friend of Finn, John D'Arcy, submitted Guilbault's application to the bank loan committee with the recommendation that the loan request be approved as an unsecured loan. The committee approved the loan, subject to renewal for a second year. In approving the loan the committee did not require a personal guaranty. However, sometime after the loan was approved, John D'Arcy altered the committee's memorandum, making it appear that D'Arcy had recommended the loan's approval provided the loan was guaranteed by Richard and Mary Finn.

From December 1976 to December 1977, the Guilbault loan performed adequately. In December of 1977, Heritage renewed its loan to Guilbault for another three-month period. In early 1978, D'Arcy received a letter from Guilbault's attorney stating that Heritage should protect itself because Guilbault was having financial difficulties.

Approximately two months later, in March or April of 1978, D'Arcy called Finn and asked the Finns to come to the bank and sign a guaranty. D'Arcy told Finn that the Federal bank examiners were walking into the bank and that, in light of the letter from Guilbault's attorney, D'Arcy would lose his job without a guaranty in the file. A short time after the call, Finn met D'Arcy in the bank lobby, at which time D'Arcy handed Finn the guaranty, which Finn took home for his wife's signature. Finn and his wife signed the guaranty and returned it that same day. The guaranty was placed in the Guilbault file and was dated December 6, 1976.

The 1977 Guilbault loan was not paid, and on April 12, 1978, Her-

itage filed suit against Thomas and Beatrice Guilbault. On November 3, 1978, Tom Guilbault filed for bankruptcy. Heritage litigated its claim in the bankruptcy court and obtained a non-dischargeable judgment for $75,000 against Thomas Guilbault. On or about May 1, 1981, Heritage assigned to Finn all of the bank's rights in the $75,000 judgment. In the collection of the judgment against Guilbault and liquidation of assets in the bankruptcy estate Finn received approximately $23,153.70. Finn did not deposit these sums with Heritage.

The Finns obtained their original home mortgage with Heritage. Later it became necessary for the Finns to build an addition on their house, and the Finns approached D'Arcy in regard to obtaining a mortgage to pay off the addition. D'Arcy stated that Heritage would give the Finns a series of construction loans and then provide a junior mortgage for the total loan amounts upon completion.

Sometime prior to July 31, 1980, D'Arcy called Finn and told him that he would have to come to Heritage and "sign off" on the construction loans for his home addition. The new Heritage mortgage Finn signed was for $190,000; this amount included what was due the bank on the Guilbault loans. At trial Finn stated he expressed surprise at the inclusion of the Guilbault debt into his wrap around mortgage, but expected that the money to cover the Guilbault debt would come from the Guilbault bankruptcy estate. From the time the Finns signed the wrap around mortgage, on July 31, 1980, they faithfully made monthly payments to Heritage.

In 1983 and 1984 Finn made repeated inquires of D'Arcy seeking relief from the Guilbault obligation. According to Finn D'Arcy assured Finn that the Guilbault obligation would be "taken care of." However, when the loan was not reduced, Finn filed suit claiming his guaranty was invalid because of a lack of consideration. The trial court agreed with Finn, declaring his guaranty null and void.

On appeal Heritage argues the trial court's finding that there was no consideration for Finn's guarantees for his cousin's loans was contrary to the manifest weight of the evidence.

■ Where an agreement of guaranty is executed contemporaneously with the original note or obligation, the consideration for the note or obligation furnishes sufficient consideration for the agreement of guaranty. (*First National Bank v. Chapman* (1977), 51 Ill. App. 3d 738, 366 N.E.2d 937.) However, where a debt is incurred and thereafter a third party promises to pay or guarantee it, some additional consideration is necessary to support such a promise. (*First National Bank v. Chapman* (1977), 51 Ill. App. 3d 738, 366 N.E.2d 937.) Consideration has been defined as "some right, interest, profit or benefit

accruing to one party or some forbearance, disadvantage, detriment, loss or responsibility given, suffered or undertaken by the other." *Artoe v. Cap* (1986), 140 Ill. App. 3d 980, 985, 489 N.E.2d 420.

■ Finn did not execute the guaranty contemporaneously with the original Guilbault loan. Consequently the issue to be addressed is whether there is additional consideration present between Heritage and Finn to support Finn's subsequent guaranty of the Guilbault loan. Examining the record it is apparent that both Finn guarantees are supported by sufficient consideration.

The first Finn guaranty was signed in March or April of 1978. At that time D'Arcy, acting as an agent for Heritage, called and asked the Finns to come to the bank to sign a guaranty. The Finns signed the guaranty and returned it the same day. Finn's action of guarantying the bank loan was clearly a detriment to Finn and his wife. The consideration received by Finn for his guaranty was the bank's not acting to dismiss Finn's friend D'Arcy from his position. A promise based upon consideration of benefit to a third person constitutes sufficient consideration for a promise or agreement. (*Lauer v. Blustein* (1971), 1 Ill. App. 3d 519, 274 N.E.2d 686.) Finn does not dispute that D'Arcy would have lost his job but for the Finns' guaranty. Consequently, D'Arcy retaining his job was consideration for Finn's guaranty of the Guilbault loan.

The second guaranty executed by Finn was also supported by adequate consideration. In July of 1980, D'Arcy called Finn and told him that he would have to come to the Heritage and "sign off" on the construction loans for Finn's home additions. The new mortgage Finn signed included the Guilbault loan. At trial D'Arcy testified that he would have not given the Finns the 1980 mortgage for the construction loans if the Finns had told him that they would not perform under their guaranty of the Guilbault obligation.

The plaintiff argues and the trial court found two reasons for the alleged inadequacy of consideration for the second Finn guarantee. First the trial court felt that Heritage had already committed itself to granting the Finn home addition loans. Secondly, the trial court found that the Finn "home addition" loan would have been approved even if Finn did not guaranty the Guilbault loan for fear of losing the business of a medical group in which Finn was an important financial employee.

With regard to the plaintiff's loan approval argument it can be determined that the inclusion of the Guilbault loan was an integral part in the approval and terms of the Finn construction loan. Defendant's exhibit No. 40 dated July 9, 1980, is a loan dispersal sheet which

shows the amount requested by the Finns to be borrowed from Heritage at $53,825.55. The interest rate was to be set at 14%. The dispersal sheet includes a provision which states the loan agreement is to include the Guilbault debt. The amount of the entire wrap around loan, including the Guilbault debt which Finn guaranteed, was for $190,000, at 9%, amortized over a 30-year period. Thus, in exchange for Finn's guaranty, benefits were conferred upon Finn in the form of a lower interest rate.

The record reveals that Finn and Heritage, through D'Arcy, had orally agreed to provide the Finns with some type of construction loans to finance the Finns' home addition. However, the loan agreement was not complete; neither the interest rate nor period of the loan had been agreed upon. The loan agreement which included the Guilbault debt provided favorable terms to the Finns and was only officially approved after the Guilbault debt had been included.

The plaintiff also contends Heritage would have approved the Finns' "home addition" loans for fear of losing the business of a medical group in which Finn was an important financial employee. This argument is not supported by the record. Although it is correct that Finn was the head of an important Heritage customer, it does not mean that Finn would have been approved for a personal home addition loan simply on that basis. Finn has failed to present any officially executed documentation that Heritage had preapproved his home addition mortgage. In addition D'Arcy, who is no longer an employee of Heritage and is a close personal friend of the Finns, testified that Heritage would not have loaned the Finns the "home addition" money had they not signed the second Guilbault guaranty.

In summary based upon the evidence presented, it can be determined that the guarantees executed by Richard Finn on the Guilbault loan were supported by adequate consideration.

For the foregoing reasons the judgment of the circuit court of Will County is reversed and remanded with directions to enter judgment in favor of the defendant.

Reversed and remanded.

HEIPLE and SCOTT, JJ., concur.