THIRD DIVISION
FEBRUARY 28, 2007

No. 1-06-1145

PERFORMANCE ELECTRIC, INC., MARY CAMPANILE )
and VITO CAMPANILE, SR.,                     )          Appeal from the
                                             )          Circuit Court of
        Plaintiffs-Appellants,               )          Cook County.
                                             )
v.                                           )          No. 05 L 3149
                                             )
CIB BANK,                                    )          The Honorable
                                             )          Barbara J. Disko,
        Defendant-Appellee.                  )          Judge Presiding.


JUSTICE GREIMAN delivered the opinion of the court:

Plaintiffs, Mary Campanile and Vito Campanile, Sr., appeal from an order of the trial court dismissing with prejudice their complaint for breach of contract in favor of defendant, CIB Bank, pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2004)). On appeal, plaintiffs contend that they had standing to bring a breach of contract action against defendant. In addition, plaintiffs contend that their complaint sufficiently alleged facts establishing that they suffered damages as a result of defendant's breach of its duty of good faith and fair dealing. For the following reasons, we affirm.

Plaintiff Mary Campanile was the sole shareholder and president of Performance Electric, Inc. (Performance). In 1998, Performance and defendant entered into a loan agreement, promissory note and commercial security agreement. In conjunction therewith, plaintiffs individually executed personal guaranties for all of Performance's obligations under the several documents. In 2001, following an annual audit, defendant discovered that Performance was in

financial distress. Specifically, defendant learned that, *inter alia*, Performance had neglected to satisfy employee withholding payments that it owed to the Internal Revenue Service (IRS). Thereafter, although Performance had not defaulted on its loan payments, defendant placed a hold on Performance's operating account and instructed a number of Performance's clients to send outstanding payments directly to the bank. The parties subsequently held a meeting on April 4, 2001, to discuss the situation and agreed on a future course of action. The results of that meeting were summarized in a letter written by defendant the next day, April 5, 2001, which provided that: (1) defendant would rescind the prior directive for outstanding client payments; (2) defendant would remove the hold on Performance's operating account; (3) Performance would provide updated financial information and monthly financial information thereafter; and (4) defendant and Performance would meet again during the week of April 23, 2001. Then, on April 9, 2001, despite receiving Performance's updated financial information, defendant advised Performance that it was terminating their relationship and exercising its setoff rights pursuant to the terms of their agreements.

On December 8, 2005, plaintiffs filed an amended complaint[1] for breach of contract, alleging that defendant owed them an implied duty of good faith and fair dealing as guarantors to

---

[1]Performance was a plaintiff in the initial complaint; however, the complaint was dismissed, in part, because Performance was a debtor in a federal bankruptcy action and all potential claims were owned by the bankruptcy estate. Defendant purchased the rights to Performance's potential claims and therefore Performance was not a party to the amended complaint or the instant appeal.

the agreements (*i.e.*, the original loan agreement and the subsequent "letter agreement"). Further, plaintiffs claimed defendant breached that duty, in direct contravention of terms of the letter agreement of April 4, 2001, by: (1) failing to act reasonably in securing Performance's physical assets; (2) failing to act reasonably in collecting Performance's accounts receivable; (3) failing to defer action on Performance's account; and (4) failing to remove the hold on Performance's account. The complaint additionally alleged that defendant's breach caused Performance to file for bankruptcy, thereby making plaintiffs personally responsible for some of Performance's debts. As a result, plaintiffs were forced to file personal bankruptcies and had their credit "destroyed." Further, Mary Campanile, in her capacity as a "responsible party in the corporation," remained liable to the IRS for Performance's outstanding debts. The trial court ultimately granted defendant's motion to dismiss plaintiffs' complaint with prejudice. This timely appeal followed.

We review *de novo* whether the trial court erred in dismissing plaintiffs' complaint. Chandler v. Illinois Central R.R. Co., 207 Ill. 2d 331, 349 (2003). A section 2-615 motion to dismiss attacks the legal sufficiency of a complaint by alleging that the pleading is deficient on its face. Chandler, 207 Ill. 2d at 348. In our review, we must determine whether the allegations in the complaint, viewed in a light most favorable to plaintiffs, are sufficient to state a cause of action upon which relief may be granted. Chandler, 207 Ill. 2d at 348. Applying this liberal standard, we determine that plaintiffs failed to sufficiently state a claim for breach of contract.

Plaintiffs contend that they have standing to assert the underlying complaint because they experienced personal damages beyond that experienced by Performance as a result of defendant's

breach of good faith and fair dealing. Defendant responds that plaintiffs do not have standing to assert their complaint because any injury they endured was merely derivative to the losses experienced by Performance. In the alternative, defendant argues that it did not owe plaintiffs, as guarantors to the agreements, a duty of good faith and fair dealing.

In order to assert an affirmative claim against a lender, a guarantor must establish that he suffered a direct injury as a result of the lender's alleged breach against the principal, which is independent from and not merely derivative of the resulting injury suffered by the principal. Northern Trust Co. v. VIII South Michigan Associates, 276 Ill. App. 3d 355, 363 (1995) (loss of investment in a principal is a derivative injury and will not provide standing for a guarantor); see First National Bank of Cicero v. Sylvester, 196 Ill. App. 3d 902, 913 (1990) (in dicta, the court announced that a guarantor who suffers a "direct injury" may have standing to pursue his own claim); see also United Air Lines, Inc., v. ALG, Inc., 916 F. Supp. 793, 796 (N.D. Ill. 1996) (a guarantor stands in the shoes of a contingent creditor; therefore, as with creditors, guarantors cannot recover separately for an indirect injury), citing Mid-State Fertilizer Co. v. Exchange National Bank of Chicago, 877 F.2d 1333, 1336 (7th Cir. 1989) (a guarantor may not pursue his own remedy when he suffers an indirect injury).

In the instant case, plaintiffs brought their claim under the loan and letter agreements between Performance and defendant, not the guaranty. Although not a party to those agreements, plaintiffs argue that they had standing to bring their claim as guarantors. Plaintiffs attempt to distinguish their injury from the general loss of investment in Performance by arguing that they suffered independent and distinct damages. Plaintiffs concede that those damages resulting from

repayment of Performance's loan do not constitute the requisite injury necessary to assert a claim as guarantors; however, plaintiffs argue that Mary Campanile's resulting liability to the IRS for Performance's unpaid federal withholdings was a sufficiently independent and direct injury to grant standing. We disagree. Performance's inability to satisfy its debts under the agreements directly caused plaintiffs' injuries because, as guarantors, they remained liable for the outstanding debts. We are reminded that guarantors are similarly situated to other groups, such as shareholders, limited partners and creditors, none of which can proceed individually for alleged breaches against the principal. Northern Trust Co., 276 Ill. App. 3d at 363; Mid-State Fertilizer Co., 877 F. 2d at 1335-36. In regard to the outstanding IRS liability, Mary Campanile was responsible to the IRS in her capacity as president of Performance, not as a guarantor to the agreements. As a result, Mary Campanile would have remained liable for the IRS debts even if she had not been a personal guarantor. Consequently, the resulting IRS liability cannot confer standing as a guarantor.

Because we found that plaintiffs do not have standing to assert an affirmative cause of action against defendant, we need not address whether defendant owed plaintiffs a duty of good faith and fair dealing. We note, however, that had this lawsuit been brought by defendant under the guaranty and plaintiffs asserted an affirmative defense, we nevertheless would have determined that plaintiffs failed to sufficiently state a cause of action. Review of the complaint demonstrates that plaintiffs ambiguously argued that defendant breached its duty of good faith and fair dealing by failing to act "reasonably." Consequently, under those circumstances, the complaint would not have survived a motion to dismiss.

1-06-1145

Accordingly, we affirm the judgment of the circuit court of Cook County.

Affirmed.

KARNEZIS, J. concurs.

PRESIDING JUSTICE THEIS, specially concurring:

In this case, the majority finds that plaintiffs do not have standing to assert their breach of contract claim against defendant because they are not parties to the loan and letter agreements. Thus, the majority affirms the circuit court's order granting defendant's section 2-615 motion to dismiss plaintiffs' complaint. Although I would also affirm the circuit court's order granting defendant's motion to dismiss, I would find that plaintiffs failed to state a cause of action for breach of contract because they did not plead that their alleged injury resulted from the alleged breach.

As the majority points out, we review the circuit court's grant of a section 2-615 motion to dismiss *de novo*. W.W. Vincent & Co. v. First Colony Life Insurance Co., 351 Ill. App. 3d 752, 757, 814 N.E.2d 960, 965 (2004). In addition, we may affirm based upon any reason appearing in the record, even if that reason was not relied upon by the circuit court. W.W. Vincent & Co., 351 Ill. App. 3d at 757, 814 N.E.2d at 965.

In order to state a claim for breach of contract, a plaintiff must establish: (1) the existence of a valid, enforceable contract; (2) performance of the contract by the plaintiff; (2) a breach by the defendant; and (4) damages resulting from the breach. Unterschuetz v. City of Chicago, 346 Ill. App. 3d 65, 69, 803 N.E.2d 988, 991 (2004). More specifically, the damages pled must have proximately resulted from the alleged breach. 24 R. Lord, Williston on Contracts §64.13 (4th ed.

-6-

1-06-1145

2002); see also, e.g., Economy Fire & Casualty Co. v. GAB Business Services, Inc., 155 Ill. App. 3d 197, 201, 507 N.E.2d 896, 899 (1987). Otherwise, there can be no recovery. Restatement (Second) of Contracts §351(1) (1981). The Restatement (Second) of Contracts offers the following test for determining whether damages are the foreseeable result of a breach of contract:

"Loss may be foreseeable as a probable result of a breach because it

follows from the breach

(a) in the ordinary course of events, or

(b) as a result of special circumstances, beyond the ordinary course of

events, that the party in breach had reason to know." Restatement (Second) of

Contracts § 351(2) (1981).

Here, plaintiffs alleged that Performance entered into a "commercial security agreement" with defendant by which defendant would loan money to Performance. Performance pledged specified assets as collateral. That agreement was also conditioned on the execution of two commercial guaranties. In those guaranties, which were executed contemporaneously with the loan, Mary and Vito each guaranteed repayment of Performance's loan to defendant. The commercial security agreement also specified that Mary's and Vito's guaranties had to be furnished prior to the disbursement of any loan proceeds.

The majority treats the guaranties and the commercial security agreement as separate agreements. However, this cannot be the case.

A guaranty must be supported by consideration just as any other contract would be, even though that consideration need not directly and personally benefit the guarantor. Restatement

-8-

(Third) of Suretyship and Guaranty §9 (1996); see also <u>Finn v. Heritage Bank & Trust Co.</u>, 178 Ill. App. 3d 609, 612, 533 N.E.2d 539, 542 (1989); <u>Lauer v. Blustein</u>, 1 Ill. App. 3d 519, 521, 274 N.E.2d 868, 869-70 (1971). Here, the consideration for the guaranties was the loan to Performance. At oral argument, counsel for plaintiffs admitted as much. In addition, the loan was expressly conditioned upon the guaranties, and without the guaranties, defendant would not have made the loan to Performance. " 'The general rule is that "in the absence of evidence of a contrary intention, where two or more instruments are executed by the same contracting parties in the course of the same transaction, the instruments will be considered together and construed with reference to one another because they are, in the eyes of the law, one contract." ' " <u>Magnuson v. Schaider</u>, 183 Ill. App. 3d 344, 357, 538 N.E.2d 1309, 1318 (1989), quoting <u>Peters & Fulk Realtors, Inc v. Shah</u>, 140 Ill. App. 3d 301, 305, 488 N.E.2d 635, 637 (1986), quoting <u>Tepfer v. Deerfield Savings & Loan Ass'n</u>, 188 Ill. App. 3d 77, 80, 454 N.E.2d 676, 679 (1983). Thus, the guaranties are part of the bargained-for exchange of the loan agreement, and the majority is incorrect to treat them separately.

After the parties established this initial contract, plaintiffs alleged in their complaint that the agreement was subsequently modified when defendant agreed to forbear from seizing Performance's accounts receivable and reopen Performance's line of credit in exchange for the furnishing of information about Performance's financial status. Plaintiffs claimed that although the requested information was tendered, defendant breached the agreement when it did not provide Performance with access to the funds. Plaintiffs alleged that as a result, Mary, the former president of Performance, was damaged because she has "been called upon personally to

pay a large portion of Performance's liability to the IRS, which would have been paid but for CIB's breaches." At oral argument, plaintiffs added that it was Mary's status as a former director of Performance that caused the IRS to pursue her personally for Performance's outstanding tax liability.

This injury does not "follow in the ordinary course of events" from defendant's failure to abide by the loan agreement and any subsequent modifications. See Restatement (Second) of Contracts §351(2) (1981). This injury to Mary is the result of Performance's failure to remain solvent. In addition, this injury does not arise by virtue of the fact that Mary and Vito were guarantors of the loan, but rather, by virtue of the fact that Mary was a director of Performance. Because this injury is not the direct result of the alleged breach of the agreement by defendant, plaintiffs have failed to state a cause of action for breach of contract. See, e.g., Economy Fire & Casualty Co., 155 Ill. App. 3d at 201, 507 N.E.2d at 899 (holding that plaintiff failed to state a claim for breach of contract where the alleged injury was not the result the defendant's conduct). Therefore, on these grounds, I would affirm the circuit court's order granting defendant's section 2-615 motion to dismiss plaintiffs' complaint.