# Illinois Official Reports

## Appellate Court

---

### *WC Media, Inc. v. Village of Gilberts*, 2020 IL App (2d) 190250

---

| | |
|---|---|
| Appellate Court Caption | WC MEDIA, INC., Plaintiff-Appellant, v. THE VILLAGE OF GILBERTS, Defendant-Appellee. |
| District & No. | Second District<br>No. 2-19-0250 |
| Filed | February 26, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 17-MR-1391; the Hon. David R. Akemann and the Hon. Kevin T. Busch, Judges, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Adam R. Vaught, Edward R. Gower, and Lari A. Dierks, of Hinshaw & Culbertson LLP, of Chicago, for appellant.<br><br>Julie A. Tappendorf and Kurt S. Asprooth, of Ancel Glink, P.C., of Chicago, for appellee. |
| Panel | JUSTICE ZENOFF delivered the judgment of the court, with opinion.<br>Presiding Justice Birkett and Justice Burke concurred in the judgment and opinion. |

**OPINION**

¶ 1     In this appeal, plaintiff, WC Media, Inc., asks us to decide whether an amended sign ordinance of defendant, the Village of Gilberts (Village), is preempted by the Highway Advertising Control Act of 1971 (Act) (225 ILCS 440/1 *et seq.* (West 2018)).[1] The trial court dismissed with prejudice plaintiff's second amended complaint alleging that the Village's amended ordinance effectively prohibits the erection of billboards within the Village, in violation of the Act. For the following reasons, we affirm.

¶ 2                                 I. BACKGROUND
¶ 3                                 A. The Controversy
¶ 4     Plaintiff sells outdoor billboard advertising. In 2017, plaintiff leased four properties in the Village, which is in Kane County, upon which it intended to erect two or three billboards facing Interstate 90 (hereinafter I-90). Section 6 of the Act (225 ILCS 440/6 (West 2018) (requiring compliance with restrictions in sections 6.01, 6.02, and 6.03 of the Act (225 ILCS 440/6.01, 6.02, 6.03 (West 2018))) governs the size, lighting, and spacing of such signs. Section 6.01 allows billboards in counties with populations of less than 2 million to be a maximum of 800 square feet in area, 30 feet in height and 60 feet in length, including border and trim but excluding ornamental base or apron, supports, and other structural components. 225 ILCS 440/6.01 (West 2018). The Illinois Department of Transportation (IDOT) permitted[2] plaintiff to erect two double-faced, 10-by-40-feet stacked billboards, not exceeding 75 feet in height. However, a Village ordinance banned billboards within the Village. When plaintiff and the Village did not resolve their differences, plaintiff filed suit.

¶ 5                                 B. The Original Complaint
¶ 6     On November 17, 2017, plaintiff filed a one-count "verified complaint for declaratory judgment." The complaint alleged the foregoing facts and asked the court to declare that the Village's ordinance was invalid because it conflicted with the Act. Plaintiff premised its claim on the Third District's decision in *Dolson Outdoor Advertising Co. v. City of Macomb*, 46 Ill. App. 3d 116, 121 (1977), which held that the city's prohibition of off-premise signs was contrary to the authority conferred on it by the Act.

¶ 7     The Village moved to dismiss the complaint, arguing first that it was time barred because plaintiff did not challenge the ordinance within 90 days of its adoption. Second, the Village argued that plaintiff failed to exhaust its administrative remedies. That argument was based on the Village's assertion, without citation of authority, that the complaint brought both a facial and an as-applied challenge to the ordinance's constitutionality.

¶ 8     In a five-page typewritten order, the trial court (Judge Akemann) denied the motion to dismiss but certified three questions to the appellate court pursuant to Illinois Supreme Court Rule 308 (eff. July 1, 2017). Rather than appeal, the Village amended its ordinance. The

---

[1]If there is a conflict between a state statute and a municipal ordinance, the ordinance must give way. *Gary-Wheaton Bank v. City of West Chicago*, 194 Ill. App. 3d 396, 402 (1990).

[2]Section 8 of the Act requires signs erected along primary highways to be permitted by IDOT. 225 ILCS 440/8 (West 2018).

amended ordinance allows billboards, but it imposes restrictions that are more severe than those imposed by section 6 of the Act. The amended ordinance restricts the size of billboards to 80 square feet and 10 feet in height. The Village then moved to dismiss plaintiff's lawsuit as moot.

¶ 9                              C. The First Amended Complaint

¶ 10    Before the court ruled on the Village's motion to dismiss, plaintiff, with leave of court, filed a one-count first amended complaint. Plaintiff alleged that the amended ordinance so severely restricts billboards that it effectively bans them, in conflict with section 1 of the Act, which protects advertisers' right to operate in business areas. More specifically, plaintiff alleged that (1) any billboard meeting the amended ordinance's requirements could not be seen from I-90, (2) the amended ordinance is not consistent with the customary use of billboards, (3) no advertiser would invest in a billboard that was so restricted, and (4) the amended ordinance denies private investment. Plaintiff requested a declaratory judgment that the amended ordinance is invalid "as it *** effectively bans billboards from any zone in the Village subject to IDOT permitting requirements."

¶ 11    The Village moved to dismiss the first amended complaint, pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2018)). First, the Village argued that the amended ordinance indeed allows billboards and that the Act and controlling legal precedent authorize the Village to impose stricter standards than those imposed by section 6 of the Act. Second, the Village argued that the first amended complaint inadequately pleaded a "facial" challenge to the constitutionality of the amended ordinance. Specifically, the Village contended that plaintiff failed to allege facts showing that the amended ordinance is invalid under "every potential application on every single property within the scope of the [amended ordinance]."

¶ 12    In its response, plaintiff acknowledged that section 7 of the Act permits a municipality to impose greater restrictions on billboards than those imposed by section 6 of the Act.[3] Plaintiff maintained, however, that the Act does not permit restrictions so severe as to amount to a prohibition. Then, plaintiff argued that its factual allegations, which had to be taken as true, sufficiently pleaded a facial challenge to the amended ordinance.

¶ 13    The trial court (Judge Busch) granted the Village's motion to dismiss without prejudice, on two bases: (1) the amended ordinance does not ban billboards, and (2) plaintiff's factual allegations were "speculative and improper in a facial attack."

¶ 14                           D. Plaintiff's Second Amended Complaint

¶ 15    With leave of the trial court, plaintiff filed a second amended complaint for declaratory judgment. It essentially repeated the allegations of the first amended complaint, but it added that plaintiff leased the locations within the Village to place billboards that would be seen by motorists on I-90. Plaintiff attached photographs of I-90 where it is adjacent to the proposed

---

[3]Section 7 of the Act provides that the signage requirements imposed by section 6 do not apply to a municipal zoning authority that has adopted ordinances that are consistent with the Act and customary use. 225 ILCS 440/7 (West 2018). In *T&S Signs, Inc. v. Village of Wadsworth*, 261 Ill. App. 3d 1080, 1091 (1994), this court held that section 7 specifically authorizes a municipality to impose more severe restrictions on outdoor advertising than those imposed by section 6 of the Act.

billboard locations, to show that billboards compliant with the amended ordinance could not be read from the highway. As well, plaintiff attached letters from billboard manufacturers stating that billboards complying with the amended ordinance would have no commercial value, because they would not be visible from I-90. Plaintiff additionally pleaded, upon information and belief, that the Village intended to so restrict the size and height of billboards that plaintiff could not erect any on its leased properties.

¶ 16 The Village filed a section 2-615 motion to dismiss the second amended complaint, arguing that (1) the amended ordinance does not prohibit billboards and, therefore, does not conflict with the Act, (2) plaintiff failed to state a facial challenge against the amended ordinance, and (3) section 7 of the Act permits municipalities to enact stricter regulations than those imposed by section 6 of the Act. Plaintiff responded that (1) the amended ordinance is so restrictive that it amounts to a prohibition of billboards and (2) plaintiff pleaded that the restrictions apply to all areas along I-90, not just to plaintiff's leased properties or those within only the Village.

¶ 17 On March 6, 2019, the trial court (Judge Busch) ruled in a typewritten order. The court found that plaintiff mounted a "facial attack" on the validity of the Village's amended ordinance. The court stated that it dismissed the first amended complaint on the basis that plaintiff failed to plead facts to show that there is "no location from which a conforming sign could be viewed." The court found that the second amended complaint set forth a claim that conforming signs would be "commercially ineffective or undesirable" but that the allegations did not compel the conclusion that "a conforming sign would be unviewable." The court next determined that it improvidently gave plaintiff leave to file a second amended complaint, because there is no set of facts that plaintiff could allege that would defeat the Village's amended ordinance, even if the amended ordinance effectively banned billboards. This being so, the court opined, it follows that the restrictions in the amended ordinance do not conflict with the Act. Thus, the court granted with prejudice the Village's motion to dismiss. Plaintiff filed a timely appeal.

¶ 18 II. ANALYSIS

¶ 19 The parties disagree as to the issue posed by this appeal. Plaintiff argues that the issue is whether a municipality can regulate highway billboards to effectively prohibit them. In contrast, the Village contends that the issue is whether plaintiff sufficiently pleaded a facial constitutional challenge to the amended ordinance. By framing the dispute this way, the Village mischaracterized plaintiff's claim as a facial constitutional challenge, which prompted the trial court to impose an inappropriately heightened pleading standard.

¶ 20 A facial constitutional challenge addresses "constitutional infirmities." *People v. Thompson*, 2015 IL 118151, ¶ 36. Here, plaintiff never asserted a constitutional infirmity but has always contended that the amended ordinance is inconsistent with the spirit of the Act. The Village is a non-home-rule unit. A non-home-rule unit cannot adopt ordinances that infringe upon the spirit of state law or are repugnant to the general policy of the state. *Hawthorne v. Village of Olympia Fields*, 204 Ill. 2d 243, 258-59 (2003). When ordinances enacted under the powers granted to non-home-rule municipalities conflict with the spirit and purpose of a state statute, they are preempted by the statute. *Hawthorne*, 204 Ill. 2d at 259. "Preemption" means "the end of local legislative control over a given subject where the legislature has adopted a scheme of regulation over the same subject." *Kirwin v. Peoples Gas Light & Coke Co.*, 173 Ill. App. 3d 699, 703 (1988). Thus, plaintiff pleaded a preemption issue.

¶ 21        In our research, we have found no case that has analyzed preemption as a facial constitutional challenge. The Village cited no authority below to support its theory that preemption is a facial constitutional challenge that requires a showing that the statute in question would be invalid under any imaginable set of circumstances. See *Gatz v. Brown*, 2017 IL App (1st) 160579, ¶ 15 (an enactment is facially invalid only if no set of circumstances exists under which it would be valid). In its appellate brief, the Village relies on inapposite federal cases that involved actual constitutional challenges. In *Immigration & Naturalization Service v. National Center for Immigrants' Rights, Inc.*, 502 U.S. 183, 186 (1991), a regulation promulgated by the Attorney General was challenged "on statutory and constitutional grounds." The respondents' complaint "alleged that the new rule was invalid on its face and therefore could not be enforced." *National Center*, 502 U.S. at 186. Obviously, the litigation in *National Center* did not involve whether a municipal ordinance was inconsistent with a statute, but the respondents squarely alleged a facial constitutional infirmity. *Reno v. Flores*, 507 U.S. 292, 299 (1993), involved a substantive due process and a procedural due process attack on a government regulation, and *Immanuel Baptist Church v. City of Chicago*, 283 F. Supp. 3d 670, 672-73 (N.D. Ill. 2017), involved parking regulations that allegedly facially violated the equal protection clause of the fourteenth amendment. The Village also relies on *People v. One 1998 GMC*, 2011 IL 110236, which presented the question whether the state criminal vehicle forfeiture provisions were facially unconstitutional as a violation of procedural due process. *GMC*, 2011 IL 110236, ¶ 1. This case, however, does not involve a constitutional challenge, and consequently, plaintiff's pleading should not have been subjected to any heightened standard.

¶ 22        Nevertheless, the Village correctly notes that plaintiff conceded below that it was making a facial constitutional challenge to the amended ordinance. The Village argues that plaintiff cannot now reject that position. It is well settled that the theory upon which a case is tried in the lower court cannot be changed on review. *Kravis v. Smith Marine, Inc.*, 60 Ill. 2d 141, 147 (1975). An appellant is required to argue on appeal points that are commensurate with the issues presented to the trial court. *Kravis*, 60 Ill. 2d at 147. However, we do not believe that plaintiff is changing theories on appeal, as the parties and the trial court understood that plaintiff's substantive challenge was preemption. The parties meticulously briefed that issue below, and the court (both Judges Akemann and Busch) demonstrated a keen understanding of the substantive issues. In dismissing the second amended complaint, Judge Busch ruled that the amended ordinance was not preempted by the Act.

¶ 23        We turn now to plaintiff's contention that the amended ordinance effectively prohibits billboards, in conflict with the Act. We review *de novo* a section 2-615 dismissal of a complaint. *Performance Electric, Inc. v. CIB Bank*, 371 Ill. App. 3d 1037, 1039 (2007). A section 2-615 motion to dismiss attacks the legal sufficiency of a complaint on its face. *Performance*, 371 Ill. App. 3d at 1039. In ruling on a section 2-615 motion to dismiss, the court accepts all well-pleaded facts as true. *Village of South Elgin v. Waste Management of Illinois, Inc.*, 348 Ill. App. 3d 929, 930 (2004). We must determine whether the allegations of the complaint, viewed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. *Performance*, 371 Ill. App. 3d at 1039. Courts construe pleadings liberally, with a view toward doing substantial justice between the parties. *South Elgin*, 348 Ill. App. 3d at 931. A complaint should be dismissed with prejudice only if it is

apparent that the plaintiff can prove no set of facts that will entitle him or her to recover. *Bruss v. Przybylo*, 385 Ill. App. 3d 399, 405 (2008).

¶ 24      This appeal also requires us to construe the Act. Issues of statutory construction are questions of law, which we review *de novo*. *Bouton v. Bailie*, 2014 IL App (3d) 130406, ¶ 7. If the language of the statute is clear and unambiguous, we will give it its plain and ordinary meaning without resorting to aids of statutory construction. *Bouton*, 2014 IL App (3d) 130406, ¶ 8. We may not depart from the plain language by reading into the statute exceptions, limitations, or conditions that were not expressed by the legislature. *Bouton*, 2014 IL App (3d) 130406, ¶ 8.

¶ 25      We begin our analysis with an overview of the Act.

¶ 26                                       A. The Act

¶ 27      The Act became effective on July 1, 1972, in response to Congress's enactment of the Highway Beautification Act of 1965 (23 U.S.C. § 131 *et seq.* (1970)), also known as the Lady Bird Bill. *Scadron v. City of Des Plaines*, 153 Ill. 2d 164, 170 (1992); *National Advertising Co. v. Village of Downers Grove*, 166 Ill. App. 3d 58, 60 (1988). The express purpose of the Lady Bird Bill was to control outdoor advertising signs near highways, and it required states to enact similar legislation to preserve federal funding for state highways. *National*, 166 Ill. App. 3d at 60. Indeed, Illinois's "vital State policy" in passing the Act was to preserve its share of federal highway funds. *Scadron*, 153 Ill. 2d at 190.

¶ 28      The Act provides for the control of outdoor advertising signs that are located within 660 feet of interstate highways. *Scadron*, 153 Ill. 2d at 170. Section 1 mirrors the purposes of the federal law, but in addition, it includes a declaration that outdoor advertising is a legitimate commercial activity that should be allowed to operate in business areas. 225 ILCS 440/1 (West 2018); *Scadron*, 153 Ill. 2d at 173-74. Section 1 further provides that the standards imposed by section 6 of the Act are consistent with "customary use" in this State, more severe restrictions being inconsistent with customary use and ineffective to accomplish the purposes of the Act. 225 ILCS 440/1 (West 2018); *Scadron*, 153 Ill. 2d at 171-72.

¶ 29      Section 6 of the Act, as noted, places size, lighting, and spacing limitations on outdoor signs. *Scadron*, 153 Ill. 2d at 172.

¶ 30      Section 7 of the Act provides that " 'State, county or municipal' " zoning authorities may also regulate the size, lighting, and spacing of signs. *Scadron*, 153 Ill. 2d at 172. Section 7 states that section 6's regulations do not apply to such municipal regulations that are "consistent with the intent of this Act and with customary use." 225 ILCS 440/7 (West 2018); *Scadron*, 153 Ill. 2d at 172.

¶ 31                         B. Relevant Case Law Interpreting the Act

¶ 32      Next, we will examine relevant case law, as it developed, to understand how the provisions of the Act have been applied. In *Dolson*, the city of Macomb, a non-home-rule unit, enacted a blanket prohibition of billboards in areas that were zoned business and industrial. *Dolson*, 46 Ill. App. 3d at 118. The plaintiff sued to have the ordinance declared invalid because it was contrary to the Act. *Dolson*, 46 Ill. App. 3d at 118. The trial court found the ordinance to be invalid. *Dolson*, 46 Ill. App. 3d at 118. On appeal, the city urged that its restriction was permitted by section 7 of the Act. *Dolson*, 46 Ill. App. 3d at 120. However, the Third District

held that section 1 of the Act specifically authorized billboards. *Dolson*, 46 Ill. App. 3d at 120. Conversely, the appellate court found no provision in the Act authorizing non-home-rule municipalities to prohibit off-premise signs, and it affirmed the trial court. *Dolson*, 46 Ill. App. 3d at 121.

¶ 33        In *Dingeman Advertising, Inc. v. Village of Mt. Zion*, 157 Ill. App. 3d 461, 462 (1987), the Village of Mt. Zion allowed billboards, but it imposed size limitations that were more severe than those imposed by section 6 of the Act. *Dingeman*, 157 Ill. App. 3d at 462. The trial court found that the restrictions conflicted with the Act and granted the plaintiff summary judgment. *Dingeman*, 157 Ill. App. 3d at 462. On appeal, the plaintiff argued that section 1 of the Act provided that the limitations imposed by section 6 set the customary use for zoning in commercial and industrial areas, while the village argued that section 7 allowed municipalities to make more restrictive provisions than those imposed by section 6. *Dingeman*, 157 Ill. App. 3d at 463. The Appellate Court, Fourth District, stated the issue as whether the Act preempted "all municipal zoning controls." *Dingeman*, 157 Ill. App. 3d at 462. The court first noted that federal funding was "the basic reason for the Act." *Dingeman*, 157 Ill. App. 3d at 463. The court next noted that the conflicting interests of the advertising sign industry and those of municipalities influenced different provisions of the Act. *Dingeman*, 157 Ill. App. 3d at 463. The court stated that section 1 afforded protection to the advertising industry, while section 7 protected municipalities desiring additional limitations. *Dingeman*, 157 Ill. App. 3d at 464. The court noted that, if the "customary use" referred to in section 1 is the limits provided by section 6, then section 7, giving municipalities the right to exert controls, is a nullity. *Dingeman*, 157 Ill. App. 3d at 463. The court declared that "[t]here is no specific legislative determination of which conflicting interest should prevail." *Dingeman*, 157 Ill. App. 3d at 465. The court held that section 7 prevailed, reasoning that to hold otherwise would frustrate the purpose of the Act, which was "to preserve natural beauty and to promote the reasonable, orderly and effective display" of signs. (Internal quotation marks omitted.) *Dingeman*, 157 Ill. App. 3d at 465. The court acknowledged *Dolson* but noted that the Third District had relied on section 1 of the Act in holding that the municipal restrictions were invalid. *Dingeman*, 157 Ill. App. 3d at 464. Thus, *Dolson* and *Dingeman* were at odds.

¶ 34        This court followed *Dingeman* and rejected *Dolson* in *National*, 166 Ill. App. 3d at 61-62. In *National*, we held that the "conflict between section 1 and section 7 of the Act should be resolved so as to permit a municipality to more strictly regulate" advertising signs. *National*, 166 Ill. App. 3d at 61. We reasoned that a municipality's enactment of more stringent sign regulations will not jeopardize the continued receipt of federal highway funds and that "it was for that purpose" that the legislature adopted the Act. *National*, 166 Ill. App. 3d at 62.

¶ 35        In *Scadron*, our supreme court addressed the question, certified to it by the Seventh Circuit, whether a home-rule unit may regulate outdoor advertising to totally exclude outdoor advertising signs. *Scadron*, 153 Ill. 2d at 168. The plaintiffs leased property that abutted a tollway and was zoned for commercial and industrial purposes, and they intended to erect a double-faced billboard on it. *Scadron*, 153 Ill. 2d at 168. However, the city's sign regulations prohibited billboards that would be viewed from the tollway. *Scadron*, 153 Ill. 2d at 169. The plaintiffs filed suit in federal district court, arguing that the city's ordinance was preempted by the Act. *Scadron*, 153 Ill. 2d at 169. The district court dismissed the complaint, the plaintiffs appealed, and the Seventh Circuit certified the matter to our supreme court. *Scadron*, 153 Ill. 2d at 169-70. Our supreme court held that section 7 of the Act gives municipalities the authority

to regulate signage without regard to whether the municipality is a home-rule unit. *Scadron*, 153 Ill. 2d at 186, 188. The supreme court then determined that the city's ban did not conflict with the federal law and would not result in a loss of highway funds. *Scadron*, 153 Ill. 2d at 191. The court thus concluded that home-rule municipalities have the power to ban signs, because "the legislature did not specifically express its intention that a home rule unit's concurrent power to regulate signs is limited." *Scadron*, 153 Ill. 2d at 188,194.

¶ 36     In *Whiteco Metrocom Division v. Village of Downers Grove*, 197 Ill. App. 3d 174, 181-82 (1990), this court considered the meaning of "customary use" as used in section 1 of the Act. Section 1 provides that the standards imposed by section 6 are "consistent" with "customary use" in this State. 225 ILCS 440/1 (West 2018). The plaintiff argued that Downers Grove's more severe restrictions were not consistent with "customary use." *Whiteco*, 197 Ill. App. 3d at 177. This court disagreed and held that the section 6 standards were maximum standards and only signs that exceed the maximum are inconsistent with customary use. *Whiteco*, 197 Ill. App. 3d at 182. Thus, we achieved harmony between section 1, which allows signs in business areas, and section 7, which grants municipalities the power to prescribe smaller signs than those allowed by section 6. *Whiteco*, 197 Ill. App. 3d at 182.

¶ 37     In *T&S Signs, Inc. v. Village of Wadsworth*, 261 Ill. App. 3d 1080, 1082 (1994), the plaintiff argued that Wadsworth could not enact more stringent regulations of outdoor advertising than those imposed by section 6 of the Act. The plaintiff, recognizing that the supreme court in *Scadron* held that home-rule units could impose stricter regulations, argued that when there is a state law regulating a certain field, such as outdoor advertising, a non-home-rule unit cannot adopt ordinances that conflict or infringe on the spirit of the state law. *T&S*, 261 Ill. App. 3d at 1086. We pointed out that a municipality's home-rule or non-home-rule status was not the determining factor, because section 7 of the Act specifically authorizes municipalities to enact regulations concerning outdoor advertising. *T&S*, 261 Ill. App. 3d at 1089, 1091.

¶ 38                    C. Whether the Amended Ordinance Is Valid
¶ 39     We must now determine whether the Village's amended ordinance is a valid regulation. Plaintiff acknowledges that the Village can regulate outdoor advertising under section 7 of the Act but argues that the Village cannot ban it, relying on *Dolson*. The Village maintains that its amended ordinance permits billboards and is, therefore, a permissible regulation, relying on *T&S*.

¶ 40     Plaintiff asserts that the trial court did not consider the differences between home-rule and non-home-rule units in ruling that both entities can ban billboards. This argument misses the mark. The court reasoned that home-rule units can ban billboards (*Scadron*) and that section 7 gives non-home-rule units the same power to regulate as home-rule units (*T&S*), so both have the authority to ban. However, the court also found that, if a total ban does not run afoul of the Act, "it follows" that the Village's ordinance must be valid, even if its restrictions make billboards unviewable from I-90. Thus, the court found not that the Village's amended ordinance is a total ban, only that it is a restriction that does not offend the Act.

¶ 41     The plain language of the amended ordinance allows billboards that are up to 80 square feet and 10 feet high. The crux of plaintiff's virtual-ban argument is the allegation in paragraph 29 of the second amended complaint that a conforming billboard "would have no commercial value." Plaintiff alleged that such a regulation is contrary to section 1 of the Act, which protects advertisers. In *National*, this court recognized that the purpose of the Act was to secure federal

highway dollars, and we adopted *Dingeman*'s reasoning that section 7, which protects the interests of municipalities to regulate signage, prevails over section 1, which protects the interests of the advertising industry. *National*, 166 Ill. App. 3d at 61, 62. Plaintiff has not given us any reason to abandon our holding in *National*. *Dolson* is inapplicable, because it involved a blanket ban on billboards, which the Village's amended ordinance does not, and because we disagreed with its reasoning in *National*.

¶ 42 We believe that our decision in *Whiteco* resolves the issue posed by this appeal. In *Whiteco*, we held that a noncustomary use is demonstrated only when signs *exceed* the regulations imposed by section 6 of the Act. *Whiteco*, 197 Ill. App. 3d at 182. Thus, the restrictions in the Village's amended ordinance are not contrary to customary use. In *Whiteco*, we construed sections 1 and 7 together to say that the Act assures that outdoor advertising signs in business areas shall be allowed and may be as large as that provided for in section 6, except insofar as they are located in zoned business and industrial areas that are otherwise regulated. *Whiteco*, 197 Ill. App. 3d at 182. In other words, compliance with local zoning regulations does not deprive an advertiser of its right to operate in business areas. Whether an advertiser finds it commercially advantageous to do so is not a relevant criterion in determining the validity of an ordinance. Accordingly, we hold that the trial court properly dismissed plaintiff's second amended complaint.

¶ 43                                      III. CONCLUSION
¶ 44 For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

¶ 45 Affirmed.