# Illinois Official Reports

## Appellate Court

> ## *Performance Food Group, Inc. v. Ariva Hospitality, Inc.*,
> ## 2020 IL App (3d) 190409

| | |
|---|---|
| Appellate Court Caption | PERFORMANCE FOOD GROUP, INC., Plaintiff-Appellant, v. ARIVA HOSPITALITY, INC., an Illinois Corporation, d/b/a Garden Hotel, and CHAD BRYDEN, Individually, Defendants-Appellees. |
| District & No. | Third District<br>No. 3-19-0409 |
| Filed | May 27, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Rock Island County, No. 19-SC-720; the Hon. John L. McGehee, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James S. Zmuda, of Califf & Harper, P.C., of Moline, for appellant.<br><br>Amanda Adams Martinez, of Law Office of Amanda Adams Martinez LLC, of Loves Park, for appellee Chad Bryden.<br><br>No brief filed for other appellee. |

JUSTICE WRIGHT delivered the judgment of the court, with opinion.
Justice Carter concurred in the judgment and opinion.
Justice McDade dissented, with opinion.


**OPINION**

¶ 1    In late December 2015, Ariva Hospitality, Inc. (Ariva), was doing business as the Garden Hotel in South Beloit, Illinois. From this time until early 2019, Performance Food Group, Inc. (PFG), sold food products to Ariva on a line of credit under a customer account application, which was subject to the personal guarantee of the general manager of the Garden Hotel, Chad Bryden. Bryden left his employment as the general manager of the Garden Hotel in July 2017. In April 2019, PFG filed a small claims complaint against Ariva, whose owner could not be located for service, and Bryden, seeking to collect Ariva's debt for food products ordered for the Garden Hotel in February and March 2019. The circuit court entered judgment for Bryden. PFG appeals.

¶ 2                              I. BACKGROUND

¶ 3    On April 9, 2019, plaintiff, PFG, filed a small claims complaint for breach of contract, alleging both named defendants, Ariva and Bryden, owed PFG "the sum of $5,203.59 *** pursuant to the parties' written contract." PFG attached a customer account application and personal guarantee, dated December 23, 2015, to the small claims complaint. The customer account application established terms of credit that were extended to Ariva. This document listed Zhanhai Zhang as "ownership" of Ariva but was signed by the Garden Hotel's general manager, Bryden. Bryden also signed a separate personal guarantee, which stated:

> "FOR IN CONSIDERATION OF and as inducement for [PFG] *** to extend credit on an open account to [Ariva], the party identified in this Customer Application, the undersigned guarantor[, Bryden,] *** hereby personally, and not as an agent of [Ariva], irrevocably, absolutely and unconditionally without right of any deduction, set off or otherwise, at all times, guaranty and agree to fully and promptly pay when due ***, as primary Guarantor any and all indebtedness owing to PFG by [Ariva] on said open account, whether said indebtedness now exists or is incurred hereafter, and whether for goods or services or in the form of notes, bills[,] open account or any indebtedness in any other form. This Guarantee is absolute and continuing in nature until terminated by the written notice of Guarantor[, Bryden,] to PFG, sent certified mail ***. Any termination of this Guarantee shall not terminate Guarantor's[, Bryden,] liability for any and all indebtedness incurred prior to the effective date of termination.
>
> All information and terms and conditions appearing in the Customer Application, which is executed contemporaneously herewith, are hereby incorporated into this Guarantee by reference, including, but not limited to terms pertaining to interest charges, attorneys' fees and terms of credit. GUARANTOR[, BRYDEN,] HAS READ AND UNDERSTANDS ALL OF THE PRINTED, TYPED AND HANDWRITTEN LANGUAGE APPEARING ON ALL PAGES OF THIS THREE (3) PAGE DOCUMENT AND ACKNOWLEDGES THAT NO ESSENTIAL TERMS ARE OMITTED.

Guarantor[, Bryden,] expressly waives notice from PFG of acceptance and reliance on this Guarantee, notice of sales made to [Ariva] and notice of default by [Ariva]. Guarantor[, Bryden,] expressly consents to any modification or renewal of the terms of credit granted to [Ariva] from time to time, and waives notice of any such modification or renewal.

In the event of any default by [Ariva] of its obligations, PFG may proceed directly against Guarantor[, Bryden,] to enforce its rights, without proceeding against [Ariva] or exhausting any other remedies PFG may have. This personal guarantee shall be binding upon Guarantor, [Bryden,] its heirs, successors, representatives and assigns, and shall inure to the benefit of PFG, its successors and assigns.

* * *

The Guarantor(s)[, Bryden,] execute(s) this Guarantee on his or her own personal behalf, and not in any other capacity regardless of how Guarantor[, Bryden,] may characterize itself below."

¶ 4    On June 12, 2019, PFG presented its case against Bryden during a bench trial in small claims court.[1] PFG called Lori Vroman, an employee in PFG's credit department, as a witness. Vroman testified that Ariva stopped making payments to PFG in early 2019. According to an exhibit reviewed by Vroman, Ariva's outstanding account balance totaled $5203.59 for food products ordered for the Garden Hotel between February 8 and March 8, 2019. When PFG's sales representative travelled to the Garden Hotel to collect the outstanding account balance, he found a note posted to the door indicating the business was closed for remodeling.

¶ 5    Bryden also testified before the circuit court. According to Bryden, he was employed by Ariva as the general manager of the Garden Hotel from June 2014 to July 2017. During that time, Bryden reported to Ariva's local owner, Zhang.[2] Bryden testified that he would submit vendor reports to Ariva's ownership, who would then decide whether to make purchases from the vendors. Bryden has not been in contact with his former employer or had access to Ariva's business records since leaving the company in July 2017.

¶ 6    Bryden also testified that, after leaving Ariva in July 2017, he did not terminate the personal guarantee, as that agreement allows with "written notice *** to PFG, sent certified mail." Bryden was unaware PFG and Ariva did business through early 2019. Further, Bryden did not know of Ariva's debt, incurred in early 2019, until PFG filed the small claims lawsuit.

¶ 7    On June 21, 2019, after taking the matter under advisement, the circuit court entered an order announcing its decision in favor of Bryden. The circuit court's order stated:

"Bryden was the general manager when he signed the personal guarantee agreement, but he left his employer Ariva *** in 2017. The agreement had no stated termination date. *** Bryden did not approve the [2019] purchase order in dispute since he was no longer employed at Ariva ***. There was no new personal guarantee introduced from a current general manager at the time of the [2019] purchase order from [PFG]. [PFG] had a salesman at the time of the sale in 2019 and knew of the

---

[1]As of the date of the bench trial, PFG was unable to locate and complete service of process on Ariva's owner, Zhang.

[2]Bryden believed Zhang "was the original owner of the [Garden Hotel] property." Another owner, Liancheng Zhang, was a director of Ariva. Bryden stated Ariva has properties throughout China.

workings of Ariva ***. There had been a gap of almost 4 years from when the guarantee agreement had been signed by [Bryden] and the new [2019] purchase order was placed.

In a contract which does not have a fixed time for performance, the law presumes that the parties intended the contract for a reasonable time. What constitutes a reasonable time is dependent upon the nature, purposes and circumstances surrounding the transactions.

Like other contracts, a guarantee is complete when the minds of parties meet in mutual ascent [*sic*] to the same things in the same sense. Circumstances changed when *** Bryden left his employer *** in 2017, and it also changed for [PFG] because the salesman would be dealing with a new general manager or company representative, and not *** Bryden.

Personal guarantee agreements signed by the general manager are to make sure the current bills get paid by their employers. Once the general manager no longer works at a company, all leverage to get bills paid by that general manager are lost. It would be unreasonable to hold *** Bryden liable for this debt due to the circumstances and facts of this case. Judgment for [Bryden]."

PFG filed a timely notice of appeal on July 1, 2019.

¶ 8                                II. ANALYSIS

¶ 9        In this case, PFG challenges the circuit court's conclusion that it would be unreasonable for Bryden's 2015 personal guarantee to extend to a debt for food products ordered by Ariva in February and March 2019. PFG submits the circuit court's judgment deprived PFG of the benefit of relying on Bryden's personal guarantee. Further, PFG rejects the circuit court's factual findings pertaining to PFG's knowledge of "the workings of Ariva."

¶ 10       In response, Bryden argues the circuit court correctly found the personal guarantee terminated after a reasonable time. Bryden submits the personal guarantee should not be construed as a "perpetual, blank check" for PFG. With respect to consideration, Bryden argues it would be "unreasonable to hold [him] responsible for the debts of a former employer when [he] derived no benefit from a vendor relationship nineteen months after his employment" ended.

¶ 11       Recently, our court had the opportunity to address the nature of personal guarantees. See *TH Davidson & Co. v. Eidola Concrete, LLC*, 2012 IL App (3d) 110641. In doing so, we noted personal guarantees are construed according to principles of contract. *Id.* ¶ 10; see also Restatement (Third) of Suretyship and Guaranty §§ 7, 14 (1996). Thus, we review *de novo* the legal questions arising from the construction of a personal guarantee. *TH Davidson*, 2012 IL App (3d) 110641, ¶ 10. To the extent required, we review factual findings against the manifest weight of the evidence. *International Supply Co. v. Campbell*, 391 Ill. App. 3d 439, 447-48 (2009).

¶ 12       Here, the language of the personal guarantee contemplates "a future course of dealing or a succession of credits" between PFG and Ariva. (Internal quotation marks omitted.) See *TH Davidson*, 2012 IL App (3d) 110641, ¶¶ 11-12. Without question, Bryden agreed to act as "a secondary obligor for all future obligations of the principal obligor[, Ariva,] to the obligee," PFG. See *id.*; Restatement (Third) of Suretyship and Guaranty § 16 (1996). Further, PFG's extension of credit to Ariva sufficed as consideration for the personal guarantee. See *Tower*

*Investors, LLC v. 111 East Chestnut Consultants, Inc.*, 371 Ill. App. 3d 1019, 1028 (2007); *Finn v. Heritage Bank & Trust Co.*, 178 Ill. App. 3d 609, 611-12 (1989); Restatement (Third) of Suretyship and Guaranty § 9 (1996). Therefore, we agree with PFG that Bryden's personal guarantee is a continuing guarantee, supported by consideration, that was enforceable against Bryden when executed.

¶ 13    Nonetheless, we also recognize that the terms of this personal guarantee expressed an unlimited duration for Bryden's liability. In *TH Davidson*, our court acknowledged the controlling supreme court precedent regarding continuing guarantees of unlimited durations. See *TH Davidson*, 2012 IL App (3d) 110641, ¶ 13. Over a century ago, in *Mamerow v. National Lead Co.*, 206 Ill. 626, 634 (1903), our supreme court held "where the guaranty is a continuing one, and is unlimited as to duration and amount for which the guarantor will be liable, such time and amount must be reasonable, under the circumstances of the particular case." See also *Wilmette Partners v. Hamel*, 230 Ill. App. 3d 248, 257 (1992) (stating what is "a reasonable time is a matter of proof under all the *** circumstances" and is "a question of fact").[3]

¶ 14    Here, the circuit court did not specifically reference the decisions in *TH Davidson* or *Mamerow*. However, as required by those cases, the circuit court made detailed findings of fact, under the circumstances of this particular case, regarding the reasonable duration of Bryden's personal guarantee. See *TH Davidson*, 2012 IL App (3d) 110641, ¶ 13; *Mamerow*, 206 Ill. at 634. Moreover, the circuit court's findings of fact laid a strong foundation for its legal analysis, which mirrored the approaches utilized in *TH Davidson* and *Mamerow*. Specifically, the circuit court recognized Bryden's personal guarantee was enforceable for a reasonable amount of time but was not enforceable indefinitely.

¶ 15    Indeed, the circuit court found Bryden's personal guarantee was executed when he was the general manager of the Garden Hotel in 2015 but Bryden's secondary obligation was not "triggered" until Ariva defaulted on its payments for food products ordered in early 2019. See *Campbell*, 391 Ill. App. 3d at 449 ("A guarantor's secondary liability is triggered by a default of the debtor on the obligation *** owe[d] to the creditor."). The circuit court made factual findings that Bryden "left his employer Ariva *** in 2017," Bryden "did not approve the [2019] purchase order in dispute," and PFG was "dealing with a new general manager or company representative." As such, the circuit court indicated "all leverage to get bills paid by *** [Bryden was] lost." These findings of fact are not contrary to the manifest weight of the evidence. See *id.* at 447-48.

¶ 16    Based upon these findings of fact, the circuit court concluded, consistent with controlling precedent, that it would be unreasonable "to hold *** Bryden liable for this debt" under the particular circumstances of this case. See *TH Davidson*, 2012 IL App (3d) 110641, ¶ 13; *Mamerow*, 206 Ill. at 634; *Hamel*, 230 Ill. App. 3d at 257. Therefore, we affirm.

---

[3]We note the issue in *TH Davidson* focused on whether the amount owed under the personal guaranty was limited to $1000. See *TH Davidson*, 2012 IL App (3d) 110641, ¶ 9. Based on the facts of that case, we affirmed as reasonable, while citing *Mamerow*, the circuit court's decision to hold the defendant liable for $5600.80 instead of $1000. See *id.* ¶ 13 (citing *Mamerow*, 206 Ill. at 634).

¶ 17                                   III. CONCLUSION

¶ 18        The judgment of the circuit court of Rock Island County is affirmed.

¶ 19        Affirmed.

¶ 20        JUSTICE McDADE, dissenting:

¶ 21        The majority has affirmed the order of the Rock Island circuit court relieving defendant, Bryden, of an obligation incurred as personal guarantor for his former employer, Ariva, to pay Ariva's defaulted debt. I do not agree with the fundamental premise on which the decision rests, and I, therefore, respectfully dissent.

¶ 22        After acknowledging the law that would confirm that the personal guarantee executed by Bryden is a legally recognized and permitted continuing obligation (*supra* ¶ 12), the majority finds, erroneously in my opinion, that the personal guarantee executed by Bryden was of "unlimited duration" and was, therefore, not legally enforceable against him. I would find, for two reasons, that the guarantee was not of "unlimited duration." The first reason is that it specifically provided for its termination, solely at Bryden's totally unfettered election whenever he chose. The only qualifications were that he give PFG written notice by certified mail and that he accept responsibility for nonpayments by Ariva prior to his execution of the termination provision. The letter would give PFG notice that Bryden was no longer serving as personal guarantor and the opportunity to secure a new personal guarantor for its future dealings with Ariva. There is no reasonable construction of this clause that supports the conclusion urged by Bryden, and implicitly accepted by the majority, that it is "a perpetual blank check for PFG."

¶ 23        The second reason is that Bryden expressly agreed in the document he signed that no essential terms had been omitted from the contract, an acknowledgment that is both true as to the termination provision and legally binding on him.

¶ 24        The majority makes numerous references to the trial court's findings of fact, but there was no need or justification for factual findings. The contract is not ambiguous nor does the majority find that it is.

¶ 25        The personal guarantee is a single-page document in which Bryden, "personally, and not as an agent of Purchaser" agrees "to fully and promptly pay when due" "any and all indebtedness owing to PFG by Purchaser on said open account." The contract then limits its duration as follows: "This Guarantee is absolute and continuing in nature *until terminated by the written notice of Guarantor to PFG sent certified mail, return receipt requested to [address]. Any termination of this Guarantee shall not terminate Guarantor's liability for any and all indebtedness incurred prior to the effective date of termination.*" It reconfirms the personal nature of the promise in the following terms: "The Guarantor(s) execute(s) this Guarantee on his or her own personal behalf and not in any other capacity regardless of how Guarantor may characterize itself below."

¶ 26        The contract contains a gloss of colorful bombast and expansive language, but the actual terms, including the one at issue, are clear, unambiguous, and benign. This is not a contract of adhesion; it was not unfair, it did not impose onerous burdens, and it was, in fact, eminently reasonable. Bryden did not have to sell his soul or his first-born child to release himself from his contractual promise to act as personal guarantor; he was not even required to secure the

acquiescence of PFG. He only needed to send a letter to withdraw that promise. He *chose* not to do that. Had he sent the letter when he left Ariva's employ, *or at any time before February/March 2019*, he would not have incurred the debt for which PFG has now sought to hold him responsible and from which our courts have improperly freed him.